BOARD OF EDUCATION OF OAKLAND SCHOOLS v
SUPERINTENDENT OF PUBLIC INSTRUCTION

1. STATUTES—AMENDMENT—VETO.

The executive power of veto exercised over a provision of legislation does not include the power to enact legislation or the power to repeal or modify old legislation; therefore, the veto of a specific section of the school aid act as proposed by the Legislature in 1971 did not serve to void the corresponding section enacted in 1970 even though passage of that statute would have repealed the 1970 legislation by implication (1970 PA 100; 1971 PA 134; MCLA 388.626a[5]).

2. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL AID ACT—APPROPRIATIONS —ALLOCATION—SUPERINTENDENT OF PUBLIC INSTRUCTION.

The responsibility to allocate appropriated monies under a provision of the school aid act falls upon the Superintendent of Public Instruction (MCLA 388.626a[5], 388.635).

3. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL AID ACT—SUPERINTENDENT OF PUBLIC INSTRUCTION—STATE BOARD OF EDUCATION.

A reference to the function of the Superintendent of Public Instruction in a section of a provision of the school aid act is a reference to a function of the State Board of Education (MCLA 388.635, 388.1014).

4. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL AID ACT—APPROPRIATION —MANDAMUS.

A section of the school aid act enacted in 1970 properly "appropriated" monies for disbursement to intermediate school districts for the 1971–1972 school year even though the "appropriation" commenced in the following fiscal year and even though the Governor vetoed a revision of the section as proposed in 1971 because there is no constitutional requirement that an "appropriation" be made on an annual basis and because the veto of the 1971 legislation had no effect upon the section as enacted in 1970; therefore, a school district was entitled to a

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes § 95
[2–4] 68 Am Jur 2d, Schools §§ 125–127

writ of mandamus ordering the State Board of Education and the Superintendent of Public Instruction to apportion the appropriated monies as required by the school aid act, and ordering the State Treasurer to disburse funds to the school district in the amount found due under a statement of such apportionment prepared by the State Board of Education (1971 PA 120, § 13a; MCLA 388.611, 388.626a[5], 388.635).

Original action in the Court of Appeals. Submitted Division 2 December 14, 1972, at Lansing. (Docket No. 13677.) Decided June 26, 1973. Leave to appeal granted, 390 Mich 799.

Complaint by the Board of Education of Oakland Schools against John W. Porter, Superintendent of Public Instruction, and Allison Green, State Treasurer, for mandamus to compel payment of sums of money due plaintiff pursuant to the school aid act. Mandamus granted.

*Cross, Wrock, Miller & Vieson* (by *Andrew A. Paterson*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene Krasicky, Richard R. Roesch,* and *George L. McCargar,* Assistants Attorney General, for defendants.

Before: Fitzgerald, P. J., and McGregor and Targonski,* JJ.

Fitzgerald, P. J. The Oakland County School District seeks a writ of mandamus from this Court ordering the Superintendent of Public Instruction and Allison Green, State Treasurer, to perform ministerial responsibilities of designating and paying to plaintiff sums of money allegedly due them pursuant to § 16a(5) of the school aid act, MCLA 388.626a(5); MSA 15.1919(66a) (5).

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Defendants argue that the provisions of § 16a(5) of the act as set forth in a 1970 amendment to the act do not serve to "appropriate" the monies stated because appropriation items must be submitted to the Governor for passage annually and § 16a(5) purports to make a prospective appropriation commencing in the school year of 1971–1972. Defendants also urge that the fact that § 16a(5) does not specify a method for allocating the funds set aside and does not specify the mode of application for disbursement of these funds renders mandamus relief inappropriate because the amount plaintiff seeks is not determinable.

The first issue may be stated:

*If § 16a(5) of the school aid act (MCLA 388.626a[5]; MSA 15.1919[66a] [5]) is the law of the State of Michigan, does the failure of that section to apportion appropriated monies excuse defendants' failure to distribute funds?*

Const 1963, art 9, § 11 states:

"There shall be established a state school aid fund which shall be used exclusively for aid to school districts, higher education and school employees' retirement systems, as provided by law. One-half of all taxes imposed on retailers on taxable sales at retail of tangible personal property, and other tax revenues provided by law, shall be dedicated to this fund. Payments from this fund shall be made in full on a scheduled basis, as provided by law."

In conjunction with the constitutional provisions authorizing the school aid fund, the Legislature enacted the school aid act which appears at MCLA 388.611 *et seq.;* MSA 15.1919(51) *et seq.* The school aid act (as amended by 1970 PA 100) is entitled:

"An act to make appropriations for the purpose of aiding the public schools, the intermediate school dis-

tricts and the secular education of children enrolled in nonpublic schools; to provide for the disbursement of the appropriations; and to supplement the school aid fund by the levy and collection of certain excise taxes."

Section 1 (MCLA 388.611; MSA 15.1919[51]) and § 2 (MCLA 388.612; MSA 15.1919[52]) of the act read as follows:

"Sec. 1. There is hereby appropriated from the school aid fund established by section 11 of article 9 of the constitution of the state for the fiscal year ending June 30, 1965, and for each fiscal year thereafter, the sum necessary to fulfill the requirements of this act, with any deficiency to be appropriated from the general fund by the legislature.

\* \* \*

"Sec. 2. From the total amount appropriated in section 1 there is appropriated to intermediate school districts as established under sections 291a to 328a of the school code of 1955, the sum necessary but not to exceed $5,500,000.00 to provide state aid to such districts under the provisions of section 16a."

Section 16a of the act was amended by 1970 PA 100 which added subsection 5 set forth below:

"(5) Beginning in 1971–72 from the amount appropriated in section 1 there is appropriated a separate fund of $400,000.00 for the purpose of providing funds to intermediate districts which operate data processing programs, using a service fee method of financing on a cooperative basis with local school districts."

In 1971 the Legislature passed 1971 PA 134 entitled in pertinent part:

"An act to amend sections 1, 2, 3, 4, 5, 8a, 10, 11, 12, 13, 16a, \* \* \* ."

The proposed amendment to subsection 5 of § 16a of the act was as follows:

"(5) From the amount appropriated in section 1 there is appropriated a separate fund of $400,000.00 for the purpose of providing funds to intermediate districts which operate data processing programs, using a service fee method of financing on a cooperative basis with local school districts as approved by the superintendent of public instruction. Intermediate school districts shall apply for and receive funds in accordance with rules promulgated by the state board of education."

Section 16a(5) as embodied in 1971 PA 134 was vetoed by the Governor under his authority to line veto items in appropriation bills. See Const 1963, art 5, § 19.

From the above legislative history, we conclude that § 16a(5) of the act as passed by 1970 PA 100 is the law of the State of Michigan. The executive power of veto exercised over the 1971 amendment to § 16a(5) (1971 PA 134) does not include the power to enact legislation or the power to repeal or modify old legislation. See 82 CJS, Statutes, § 54, pp 86, 87. The gubernatorial veto of § 16a(5) of the school act as proposed by the Legislature in 1971 does not serve to void § 16a(5) as enacted by 1970 PA 100, even though passage of that statute would have repealed the 1970 legislation by implication.

The $400,000 appropriation of § 16a(5) must be read in conjunction with § 25 of the school aid act, MCLA 388.635; MSA 15.1919(75), which states:

"Sec. 25. On or before August 1, October 1, December 1, February 1, April 1 and June 1, the superintendent of public instruction shall prepare a statement of the amount to be distributed in such installment under the provisions of this act to the school districts, and shall deliver the same to the state treasurer, who shall thereupon draw his warrant in favor of the treasurer of each school district for the amount payable to such school district according to the statement and forthwith

deliver the warrants to the treasurer of each school district. * * * "

Section 16a(5) does not specify the manner in which the $400,000 appropriation should be apportioned. Section 25 indicates, however, that the Superintendent of Public Instruction is charged with the responsibility of determining amounts due school districts. The superintendent is further required to submit statements of the amount due to the State Treasurer who makes payment to the respective school districts on the basis of the statements submitted.

In view of the purposes of the school aid act as set forth in the title, the substantial "appropriation" for purposes of § 16a as set forth in § 2 of the act, and the express appropriation of $400,000 for purposes stated in § 16a(5) of the act, § 16a(5) must be read in conjunction with § 25 of the act. The responsibility to allocate appropriated monies under § 16a therefore falls upon the Superintendent of Public Instruction.

In *Manistique Area Schools v State Board of Education,* 18 Mich App 519 (1969), this Court stated that an action against the Superintendent of Public Instruction is in fact an action against the State Board of Education, citing MCLA 388.1014; MSA 15.1023(14). This statutory section states:

"After June 30, 1965, a reference in any law to the powers and duties of the superintendent of public instruction is deemed to be made to the state board unless the law names the superintendent as a member of another governmental agency or provides for an appeal to the state board of education from a decision of the superintendent, in which cases the reference is deemed to be made to the superintendent of public instruction appointed under the 1963 constitution. Such

superintendent of public instruction shall be responsible for the execution of the policies of the state board. The state board may delegate any of its functions to him. He shall be the principal executive and administrative officer of the state department of education."

On the basis of the above, we hold that reference to the function of the Superintendent of Public Instruction in § 25 of the school aid act (MCLA 388.635; MSA 15.1919[75]) is reference to a function of the State Board of Education. Under MCLA 388.1002; MSA 15.1023(2), the Superintendent of Public Instruction is denominated the nonvoting chairman of the State Board of Education. While it is legally irrelevant, it may be noted in support of the conclusion reached above—that the Superintendent of Public Instruction (or State Board of Education) is charged with the duty of allocating the funds designated in § 16a(5) of the school aid act—that the State Board of Education was charged with the responsibility of handling applications for and disbursements of funds under § 16a(5) as proposed by 1971 PA 134 and vetoed by the Governor.

The second issue may be stated:

*Is § 16a(5) of the school aid act of no force and effect because it fails to "appropriate" monies for disbursement to intermediate school districts?*

Defendants' principal argument may be summarized as follows: The budget appropriation scheme for the State of Michigan is established by Const 1963, art 5, § 18, and Const 1963, art 4, § 31, which read as follows:

Const 1963, art 5, § 18:

"The governor shall submit to the legislature at a time fixed by law, a budget for the ensuing fiscal period setting forth in detail, for all operating funds, the proposed expenditures and estimated revenue of the

state. Proposed expenditures from any fund shall not exceed the estimated revenue thereof. On the same date, the governor shall submit to the legislature general appropriation bills to embody the proposed expenditures and any necessary bill or bills to provide new or additional revenues to meet proposed expenditures. The amount of any surplus created or deficit incurred in any fund during the last preceding fiscal period shall be entered as an item in the budget and in one of the appropriation bills. The governor may submit amendments to appropriation bills to be offered in either house during consideration of the bill by that house, and shall submit bills to meet the deficiencies in current appropriations."

Const 1963, art 4, § 31:

"The general appropriation bills for the succeeding fiscal period covering items set forth in the budget shall be passed or rejected in either house of the legislature before that house passes any appropriation bill for items not in the budget except bills supplementing appropriations for the current fiscal year's operation. Any bill requiring an appropriation to carry out its purpose shall be considered an appropriation bill. One of the general appropriation bills as passed by the legislature shall contain an itemized statement of estimated revenue by major source in each operating fund for the ensuing fiscal period, the total of which shall not be less than the total of all appropriations made from each fund in the general appropriation bills as passed."

Const 1963, art 5, § 19, provides the Governor with the power of a "line item veto" over appropriation bills:

"Sec. 19. The governor may disapprove any distinct item or items appropriating moneys in any appropriation bill. The part or parts approved shall become law, and the item or items disapproved shall be void unless re-passed according to the method prescribed for the passage of other bills over the executive veto."

Defendants note that the term "appropriation" in Const 1963, art 4, § 31, is undefined, but contend that by its very nature the budget-appropriation procedure is an annual process. It is argued that in order to insure the integrity of the state budget-appropriation procedure, this Court must conclude that funds are not "appropriated" unless the Governor annually acts upon appropriation bills submitted by the Legislature. In accordance with defendants' argument, § 16a(5) of the school aid act as enacted by 1970 PA 100 could not have "appropriated" monies because the act was expressly prospective, commencing in the following fiscal year, and was "re-enacted or amended" and vetoed by the Governor in 1971.

Defendants' argument fails in terming the legislative revision of § 16a(5) in 1971 a "re-enactment or amendment". The Governor's veto of the revision had no effect upon 16a(5) as enacted in 1970—this section remains the law of the State of Michigan. See the discussion of Issue I, *supra.* Defendants' argument also errs in contending that the appropriation process must be an annual process. While the constitutional provisions defendants cite contemplate an annual budgetary scheme, there is no requirement that an "appropriation" need be made on an annual basis. Defendants contend that a ruling to this effect will create fiscal chaos. This contention, however, is not borne out upon a close reading of the school aid act. Consider the following:

"Appropriation" has been defined as follows:

" * * * designating the use or application of a fund.

* * *

"The act by which the legislative department of government designates a particular fund, or sets apart

a specified portion of the public revenue or of the money in the public treasury, to be applied to some general object of governmental expenditure, or to some individual purchase or expense." Black's Law Dictionary (Rev'd 4th ed), p 131.

"[M]oney set aside by formal action for a specific use." Webster's Seventh New Collegiate Dictionary, p 44.

Const 1963, art 9, § 11 states:

"There shall be established a state school aid fund which shall be used exclusively for aid to school districts, higher education and school employees' retirement systems, as provided by law. One-half of all taxes imposed on retailers on taxable sales at retail of tangible personal property, and other tax revenues provided by law, shall be dedicated to this fund. Payments from this fund shall be made in full on a scheduled basis, as provided by law."

The sources of funding for the school aid act are set forth in § 1 of the act (MCLA 388.611; MSA 15.1919[51]) as follows:

"Sec. 1. There is hereby *appropriated* from the school aid fund established by section 11 of article 9 of the constitution of the state for the fiscal year ending June 30, 1965, and for each fiscal year thereafter, the sum necessary to fulfill the requirements of this act, with any deficiency *to be appropriated* from the general fund by the legislature."

Section 16a(5) of the school aid act derives its funding from § 1 by virtue of § 2 of the act (MCLA 388.612; MSA 15.1919[52]). Section 1 of the act serves as a complete "appropriation" of the revenues from one-half of sales tax receipts pursuant to Const 1963, art 9, § 11. The additional funding "to be appropriated" from the general fund was appropriated for the 1971–72 fiscal year by 1971

PA 120, § 13a, which reads in pertinent part as follows:

"There is appropriated to the state school aid fund from the general fund of the state for the fiscal year ending June 30, 1972, such sum as may be necessary to pay the full amount of state aid for schools as authorized by Act No. 312 of the Public Acts of 1957, as amended, being sections 388.611 to 388.652 of the Compiled Laws of 1948." (Including § 16a(5) of the school aid act as enacted by 1970 PA 100.)

This bill was signed into law by the Governor. From the full amount appropriated to the school aid act, $400,000 was specifically "appropriated" for purposes set forth in § 16a(5) of the act. The "appropriation" is complete.

Supplemental briefs were filed by both parties relative to the effect of *Governor v State Treasurer,* 389 Mich 1 (1972), *rehearing granted* January 30, 1973, on the instant litigation. It is conceded that state school aid allocations to intermediate school districts were not an issue in the case of *Governor v State Treasurer* and that the case has no bearing on this matter.

Plaintiff is entitled to a writ of mandamus ordering the State Board of Education and the Superintendent of Public Instruction (as the officer charged with the execution of the policies of the state board) to apportion the $400,000 annually appropriated for the year 1971–72 in a manner consistent with the stated purpose of the school aid act, and in particular § 16a(5) thereof, and to present a statement of such apportionment to the State Treasurer. Mandamus likewise issues against the State Treasurer ordering that officer to disburse public funds to plaintiff district in the amount found due under a statement of apportionment prepared by the State Board of Education.

The message of the Governor at the time he vetoed 1971 PA 134 suggests that the order recommended herein will result in an unanticipated outlay of funds because the $400,000 appropriation was not included in the budget. In the event the recommended order does require unanticipated expenditures, a proportionate reduction in the allocation of funds under all provisions of the school aid act should be ordered.

No costs, a public question.

All concurred.