BOARD OF EDUCATION OF OAKLAND SCHOOLS v
SUPERINTENDENT OF PUBLIC INSTRUCTION

1. SCHOOLS AND SCHOOL DISTRICTS—INTERMEDIATE SCHOOL DISTRICTS—
BURSLEY EQUALIZATION ACT—MINIMUM YEARLY INCREASE—
STATUTES.

An intermediate school district for the 1973–1974 school year is entitled to receive not less than a 10% increase over the state aid received the previous year, pursuant to § 81 of the Gilbert E. Bursley School District Equalization Act, where ample funds were appropriated by the act to give all intermediate school districts a minimum 10% increase (1973 PA 101; MCLA 388.1101 *et seq.;* MSA 15.1919[501] *et seq.).*

2. SCHOOLS AND SCHOOL DISTRICTS—INTERMEDIATE SCHOOL DISTRICTS—
APPROPRIATIONS—BURSLEY EQUALIZATION ACT—STATUTES.

The amount of state aid initially allocated to all of the intermediate school districts which qualified for more than the minimum 10% increase in state aid must be reduced on a pro rata basis where the initial allocations to the intermediate district, calculated pursuant to a formula in the Gilbert E. Bursley School District Equalization Act, exceed the allocation limit of the act.

3. SCHOOLS AND SCHOOL DISTRICTS—MANDAMUS—ALLOCATION OF
FUNDS—SCHOOL AID ACT.

A proportionate reduction in the allocation of funds under all provisions of the school aid act should be ordered where an order of the Court of Appeals for a writ of mandamus requires unanticipated expenditures from the state school aid fund.

Original action in the Court of Appeals. Submitted December 9, 1975, at Lansing. (Docket No. 22076.) Decided January 7, 1976. Leave to appeal applied for.

Complaint by the Board of Education of Oakland Schools against John W. Porter, Superintendent of

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 68 Am Jur 2d, Schools § 91 *et seq.*

Public Instruction, the State Board of Education, and Allison Green, State Treasurer, for mandamus to compel payment of sums of money due plaintiff under a school aid statute. Mandamus granted.

*Cross, Wrock, Miller & Vieson* (by *Gene S. Davis),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F. Young* and *Thomas F. Schimpf,* Assistants Attorney General, for defendants.

Before: McGREGOR, P. J., and T. M. BURNS and N. J. KAUFMAN, JJ.

McGREGOR, P. J. Plaintiff Oakland Intermediate School District commenced this action for mandamus against defendant John W. Porter, Superintendent of Public Instruction, The State Board of Education, and Allison Green, State Treasurer, in the Court of Appeals, on October 10, 1974. Plaintiff's motion for an order to show cause was granted on February 20, 1975.

Plaintiff asks that defendants be compelled to pay over an additional $23,944 in state school aid for the 1973–74 school (fiscal) year, under § 81 of the Gilbert E. Bursley School District Equalization Act of 1973, 1972 PA 258; MCLA 388.1101 *et seq.;* MSA 15.1919(501) *et seq.,* as last amended by 1974 PA 242. For the 1973–74 school (fiscal) year, § 81(1) of the Bursley act provided:

"From the amount appropriated in section 11, there is allocated to intermediate districts as established under the school code of 1955, the sum necessary but not to exceed $8,350,000.00 to provide state aid to intermediate districts. There shall be allocated to each intermediate district a sum obtained by multiplying the num-

ber of pupils in membership in the constituent districts of the intermediate district by $8.00 each, which shall be reduced by a sum equal to .2 mill on the state equalized valuation of the property in the intermediate district, or for any intermediate district having a fixed allocation of less than .2 mill adopted as a separate limitation pursuant to section 6 of article 9 of the state constitution of 1963, shall be reduced by a sum equal to the fixed allocation levied on the state equalized valuation of the property in the intermediate district. *However, an intermediate district shall not receive less than a 10% increase, nor more than a $1.50 per pupil increase, in state aid under this subsection in 1973–74 over the state aid received under sections 81 and 82 in 1972–73.*"[1] (Emphasis added.)

The essential facts in this case are not disputed.

In determining the amount that each of the state's intermediate districts was to receive under § 81 of the Bursley act, the defendants basically followed a two-step process.

First, they applied the per pupil/state equalized valuation formula set forth in the second sentence of § 81 to each intermediate district in the state and thereby obtained the base amount of § 81 state aid for each district.

The second step was to determine whether the computed base amount for each intermediate district fell somewhere in between the minimum 10% increase and the maximum $1.50 per pupil increase provided for in the last sentence of § 81.

Thus, if the base amount for a district fell within the above range, then the defendants initially allocated that amount to the district. If, however, the computed base amount for a district

[1] Section 81(1) of the Bursley act, *supra,* was amended by 1974 PA 242 for the 1974–75 school (fiscal) year. The only substantive changes made were to increase the appropriation limit to $10,100,000 and to change the multiplier from $8 to $9 in the per pupil/SEV formula in the second sentence.

fell below the minimum 10% increase, then the defendants would increase that district's allocation sufficiently to provide the required 10% increase. Similarly, if the district's base amount resulted in an allowance which would have exceeded the $1.50 maximum increase, then the defendants would reduce that district's state aid to the level of the maximum increase.

Using this process for all of the state's 58 intermediate districts, it was determined that 18 districts were to receive state aid based solely on the amount derived from the per pupil/SEV formula, that 27 districts had to have their allocations raised to meet the 10% minimum, and that the remaining 13 districts had to have their allowances decreased to the maximum $1.50 per pupil level.

The plaintiff district fell within the second group, which was to have received the 10% increase in state aid. During the school (fiscal) year of 1973–74, there were 231,927 membership pupils and property with a state equalized valuation of $5,855,522,568 in plaintiff's constituent school district. Based on those figures, plaintiff would have received for that year $684,311 under the per pupil/SEV formula.

However, plaintiff had received $1,053,332 in state aid for the 1972–73 school (fiscal) year, pursuant to 1972 PA 258, § 81 and § 82.[2] Thus, under

---

[2] Prior to its repeal by 1973 PA 101, 1972 PA 258, § 82 governed the allocation of state aid to intermediate districts. Pursuant to that provision, an intermediate district would receive an amount equal to its operating budget multiplied by the percentage representing the amount of total state aid received by its constituent districts to their total operating budgets for the preceding school year. The provision guaranteed that an intermediate district would receive state aid in a sum at least equal to 50% of its operating budget. The intermediate district's expenditures for buildings and sites, cooperative educational programs and any state disapproved program were excluded from the computation of its "operating budget".

the minimum 10% increase provision in the last sentence of § 81, plaintiff was eligible to receive $1,158,665 for 1973–74.

When these computations were completed for all 58 intermediate districts, the defendants discovered that the total amount of allowances exceeded the appropriation limit of $8,350,000 for § 81 of the Bursley act by $176,055. To eliminate this deficit, the defendants thereupon reduced the amount of payments to all 58 districts on a pro rata basis. This reduction was achieved by multiplying each intermediate district's allowance by .97933432. Due to this proration, plaintiff's allowance was reduced by $23,944, the amount it now claims is owed by the defendants.

Plaintiff contends that the defendants' action, in reducing pro rata all intermediate school districts' state aid, was in violation of § 81, since the effect of this proration lowered plaintiff's allocation to an amount less than the statutorily mandated 10% minimum increase. We are constrained to agree.

Section 81 allocated $8,350,000 to provide state aid to intermediate school districts. Each intermediate district was to receive its aid under this section, pursuant to the formula based on the number of pupils and the state equalized valuation of the property in the intermediate district. However, the application of this formula was made conditional by the last sentence of § 81. That sentence mandated that an intermediate district should not receive less than a 10% increase nor more than $1.50 per pupil increase in state aid.

Thus, by this clear and unambiguous language, the Legislature expressly excluded the possibility of the defendants giving an intermediate district less than a 10% increase or more than $1.50 per pupil increase. Defendants' actions in reducing

plaintiff's allocation below the mandated 10% minimum increase, therefore, violated this precise language in § 81.

Defendants contend, however, that they had no other choice, other than to prorate the state aid to all 58 districts, once it was determined that the amount of all payments would exceed the appropriation limit of $8,350,000. In so arguing, defendants misinterpret the language of the statute. There were ample funds to give all districts a minimum 10% increase over the state aid received in 1972–73. The state school aid act, 1972 PA 258, § 81, allocated $6,400,000 to intermediate school districts. The 10% increase required only an additional $640,000 of funds, or a total of $7,040,000, considerably less than the amount allocated by § 81 of the 1973 act.

Defendants made their error by failing to regard the 10% minimum increase as just that—the *minimum* increase to which a district was entitled. Instead, when it came time to reduce the total amount of state aid, defendants treated the minimum increase districts in the same manner as they treated both those districts receiving the maximum increase and those districts receiving aid under the formula. The very nature of the words "minimum" and "maximum" rule out such an interpretation. Thus, the defendants, in order to eliminate the deficit, should have reduced pro rata the state aid of the 13 districts receiving the maximum amount as well as the state aid of those 18 districts which had qualified under the formula's provisions, until each reached its minimum allocation. In no case should defendants have reduced the aid to the 27 districts which were to receive the 10% increase, since ample funds were provided to insure each district this minimum increase.

Defendants further contend that, although our interpretation may not violate the wording of the act, it would violate the spirit and intent behind the legislation.

We are not unmindful that the Legislature, in amending § 81 of the Bursley act, intended to alter sharply the allocation of state aid to intermediate districts. The purpose of this legislation was to equalize the amount of state aid allocated to each intermediate district by giving substantial increases to those districts which lacked large financial bases (*i.e.,* state equalized valuation) to serve the size of their student populations. Thus, to achieve this result, the Legislature amended § 81 to base the amount of state aid on the number of pupils and the value of property in each intermediate district.

However, the Legislature did not intend to achieve this equalization of state aid overnight, and therefore, they enacted the last sentence of § 81. If the Legislature had failed to include this last sentence in the statute, the results would have been dramatic. The plaintiff, a district with a large financial base in proportion to its student population, would have experienced an immediate drop in school aid of approximately $500,000 between 1972–73 and 1973–74. On the other hand, a district with a large student population and a small financial base may very well have had its state aid increased by a like amount over the same period. Thus, the Legislature, in order to avoid such drastic changes in state aid, enacted the last sentence of § 81 to make the equalization process proceed on a more gradual basis and to guarantee that all intermediate districts would receive some benefit from the increase of total state aid available.

Our holding, therefore does not violate either

the spirit or the intent of the act. As noted earlier, even if each district were given the minimum 10% increase over the state aid received in 1972–73, there still would have been more than $1,000,000 of the total allocation to divide among the poorer districts. In fact, of the 31 intermediate school districts which received more than a 10% increase in state aid in 1973–74 over that received in 1972–73, only six received less than a 20% increase. The percentage increase of these 31 districts ranged from a low of 13.5% to a high of 242.52%. Although our holding may reduce the future state aid to these districts, it nevertheless still allows a growth in their state aid at a rate substantially greater than 10%. Thus, our holding does not do violence to the legislative purpose of gradually equalizing state aid while at the same time not reducing the aid to any district.

Plaintiff, therefore, is entitled to a writ of mandamus in the present action. See *Oakland Board of Education v Superintendent of Public Instruction,* 47 Mich App 760; 209 NW2d 857 (1973). Consequently, we order a writ of mandamus to issue, directing the state board of education and the superintendent of public instruction (as the officer charged with the execution of policies of the state board) to prepare a statement for the amount of $23,944.20 to be distributed to the plaintiff, pursuant to § 17 of the Gilbert E. Bursley School District Equalization Act of 1973, and to present this statement to the defendant Allison Green, State Treasurer. Mandamus likewise issues against defendant Allison Green, State Treasurer, to draw his warrant in favor of the treasurer of the plaintiff school district for the amount set forth in the statement delivered to him.

In the event our order does require unantici-

pated expenditures, a proportionate reduction in the allocation of funds under all provisions of the school aid act should be ordered. See *Oakland Board of Education v Superintendent of Public Instruction, supra.*

No costs, a public question being involved.