STOPCZYNSKI v GOVERNOR

Docket No. 45458. Submitted July 19, 1979, at Detroit.—Decided September 4, 1979. Leave to appeal applied for.

Plaintiffs, Thaddeus C. Stopczynski and others, brought an action in the Ingham Circuit Court against the Governor of Michigan, the Department of Human Services and its director to enjoin the state from funding nontherapeutic abortions. Medicaid is a state administered, state and federally funded assistance program designed to provide payment for medical services on behalf of poor people. The Department of Human Services has, since 1973 when the U.S. Supreme Court held a pregnant woman had a constitutional right to an abortion, therapeutic or otherwise, during the first two trimesters of pregnancy, authorized payment for nontherapeutic abortions, with the Federal government sharing the cost. In 1977 the U.S. Supreme Court held that states may constitutionally exclude nontherapeutic abortions from Medicaid coverage and Congress has precluded the use of Federal money for nontherapeutic abortions. In 1978 the Legislature passed a bill prohibiting the use of Medicaid funds for nontherapeutic abortions, but the Governor vetoed the bill and the Legislature was unable to override it. Then the Legislature attempted to stop state funding by passing legislation appropriating only one dollar for nontherapeutic abortions but the Governor exercised a line-item veto, and, again, the Legislature was unable to override. The Governor and defendant Director of the Department of Human Services continued to administer the Medicaid program to fund nontherapeutic abortions. Plaintiffs alleged that this is improper because the state statute only authorizes expenditures for medical services which are "required" for the treatment of individuals and nontherapeutic abortions are not "required" treatment. They further claimed that the Governor abused his line-item veto power, a negative tool to eliminate funding, to effect the affirmative action of appropriating vast sums to a use the Legislature intended only to fund to the extent of one dollar.

REFERENCES FOR POINTS IN HEADNOTE
2 Am Jur 2d, Administrative Law §§ 236, 619, 656.
79 Am Jur 2d, Welfare Law §§ 38, 39.

The trial court, Jack E. Warren, J., found that nontherapeutic abortions were *not* "required" treatment within the meaning of the statute and enjoined further funding for that purpose. Defendants appeal. *Held:*

1. The Department of Human Services has interpreted "required" in the statute as a procedural check so that state funds will not be spent for medical services which are available under the program but are inappropriate or unnecessary to the successful health care of a particular recipient. The interpretation is fair and just, and there is no compelling reason to overturn it. Once having decided what medical and health services to authorize, the department is correct in financing the medical procedures needed by the recipient to achieve those health care goals. A nontherapeutic abortion is a procedure which legally may be considered necessary to achieve the medical and health service of preventing the birth of an unwanted child, which service the department can lawfully choose to provide.

2. The Governor did *not* achieve affirmative action by his line-item veto. He merely maintained the status quo. Since the department was funding nontherapeutic abortions prior to the appropriations bill, it may continue to do so.

Reversed and injunction set aside.

1. ADMINISTRATIVE LAW — PAUPERS — MEDICAID — REQUIRED TREATMENT — STATUTES.

The interpretation by the Department of Human Services that the statute authorizing medical services under the Medicaid program to be rendered only after certification by a licensed physician that a service is "required for the treatment of an individual" is a procedural check so that state funds will not be spent on medical services which are available but inappropriate or unnecessary to the successful health care of a particular recipient is a fair and just interpretation and there is no compelling reason for the Court of Appeals to overturn it; once having decided what medical and health services to authorize, the department is correct in financing the medical procedures which are needed by the recipient to achieve those health care goals (MCL 400.108; MSA 16.490[18]).

2. ABORTION — NONTHERAPEUTIC ABORTION — MEDICAID.

Nontherapeutic abortion is a procedure which legally may be considered necessary to achieve the medical and health service of preventing the birth of unwanted children, which the De-

partment of Human Services may lawfully choose to provide under the Medicaid program.

3. ABORTION — NONTHERAPEUTIC ABORTION — APPROPRIATIONS —
   LINE-ITEM VETO.

   The Governor's line-item veto of an appropriation to the Department of Human Services of one dollar for nontherapeutic abortions had the effect of maintaining the status quo, and, since the department was funding nontherapeutic abortions prior to the appropriations bill, it may continue to do so.

*Joseph P. Zanglin, Paul E. Hamilton* and *Robert K. Costello,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija* and *William K. Basinger,* Assistants Attorney General, for defendants.

Before: R. B. BURNS, P.J., and BEASLEY and D. C. RILEY, JJ.

PER CURIAM. This action is a contest between the Legislature and the Governor. Initially, the Legislature passed SB 829,[1] which would have prohibited the use of Medicaid funds for nontherapeutic abortions. The Governor vetoed the legislation. Unable to override the veto, the Legislature attempted to restrict state funding of nontherapeutic abortions through an appropriation bill. The Governor vetoed the portions of this appropriations bill dealing with nontherapeutic abortions. When the Legislature was also unable to override this veto, plaintiffs started suit, and the trial court, holding that the Governor's veto was ineffective, enjoined defendants from funding nontherapeutic abortions. We reverse.

---

[1] "Notwithstanding the provisions of § 109, a clinical elective, or nontherapeutic abortion shall not be a service provided to recipients of medical assistance under this act."

In 1966, with the enactment of 1966 PA 321, Michigan became a participant in the medical assistance program for the medically indigent pursuant to Title XIX of the Federal Social Security Act, as amended, 42 USC 1396 *et seq.;* MCL 400.105 *et seq.;* MSA 16.490(15) *et seq.* Neither statute contains an express provision dealing with assistance for abortions, whether elective or therapeutic, under this program. At the time of the enactment of the Medicaid program the performing or procuring of all elective and of some therapeutic abortions was a felony in this state. MCL 750.14, 750.15, 750.322 and 750.323; MSA 28.204, 28.205, 28.554 and 28.555, and MCL 338.53; MSA 14.533.

In 1973, the United States Supreme Court, in *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973), and *Doe v Bolton,* 410 US 179; 93 S Ct 739; 35 L Ed 2d 201 (1973), held that a pregnant woman has a constitutional right to an abortion, elective or therapeutic, during the first two trimesters of pregnancy, as an aspect of "liberty" under the Due Process Clause of the Fourteenth Amendment. Following those decisions, the Department of Human Services, which administers the Medicaid program in Michigan, began to authorize payment for nontherapeutic abortions, and the Federal government, pursuant to Title XIX of the Social Security Act, shared the costs.

In 1977, the United States Supreme Court interpreted Title XIX as constitutionally permitting a state to exclude nontherapeutic abortions from Medicaid coverage. *Beal v Doe,* 432 US 438; 97 S Ct 2366; 53 L Ed 2d 464 (1977), *Maher v Roe,* 432 US 464; 97 S Ct 2376; 53 L Ed 2d 484 (1977). Congress, by statute, expressly precluded the use of Federal Medicaid funds for nontherapeutic abor-

tions during the fiscal year 1977. Departments of Labor and Health, Education, and Welfare appropriation act, 1977, PL 94-439, § 209, 90 Stat 1434. That limitation has persisted. PL 95-205, § 101, 91 Stat 1460.

In 1978, the Michigan Legislature passed SB 829, which would have prohibited the use of Medicaid funds for nontherapeutic abortions. On December 27, 1978, the Governor vetoed the bill, informing the Legislature of his reasons for doing so. The Legislature was unable to override the veto.

Finding direct assault on state-funded abortions unavailing, the Legislature attempted an indirect approach by passing HB 6049, an appropriations bill for the fiscal year ending September 30, 1979, in which the following line item appropriations appear:

"MEDICAL SERVICES

\* \* \*

"Hospital services and therapy, not including
nontherapeutic abortions                          $306,446,500
"Physician services, not including
nontherapeutic abortions                           144,023,600

\* \* \*

"Pharmaceutical, not including
nontherapeutic abortions                            69,809,700

\* \* \*

"Nontherapeutic abortions                                  1"

Pursuant to the power granted him by Const 1963, art 5, § 19, the Governor vetoed these line-item appropriations, reiterating in his message to the Legislature his continuing opposition. In making these line-item vetoes, however, the Governor left unchanged the subtotaled appropriation for medi-

cal services. Thus modified, HB 6049, which was a blanket appropriations bill, became 1978 PA 401 when the Legislature was unable to override the gubernatorial veto. All four lines under the heading "Medical Services" which had read as indicated above were omitted.

Subsequently, the Legislature passed HB 6650, a supplemental appropriations bill for the first three months of the fiscal year 1978-1979 for the Medicaid program. The bill provided in part:

"MEDICAL SERVICES
"Hospital services and therapy        $81,208,300
"Physician services        38,166,300
"Pharmaceutical services        18,500,000
"Nontherapeutic abortions        1"

The Governor vetoed the line-item appropriation of $1 for nontherapeutic abortions. Once again, the Legislature was unable to muster the necessary two-thirds majority to override the veto. Thus modified, HB 6650 became 1978 PA 417. A further supplemental appropriations bill for the remaining nine months of fiscal year 1978-1979, HB 6674, identical to HB 6650 except as to amounts, similarly had its $1 appropriation for nontherapeutic abortions line-item vetoed by the Governor, which veto the Legislature was unable to override. The bill became 1978 PA 561.

Following these vetoes, the Governor, acting in concert with the defendant Director of the Department of Human Services, has administered the Medicaid program so as to continue providing payments thereunder for medical indigents for all lawful abortions, both therapeutic and elective. Plaintiffs, including certain members of the Legislature, instituted this taxpayer's suit in Ingham

County Circuit Court, challenging the authority of the Governor and of the Director of the Department of Human Services to spend Medicaid funds for nontherapeutic abortions.

The trial judge, citing § 108 of the act, which states:

"Medical services shall be rendered upon certification by the attending licensed physician * * * that a service is *required* for the treatment of an individual. The services of a medical institution shall be rendered only after referral by a licensed physician * * * and certification by him that the services of the medical institution are *required* for the medical treatment of the individual * * *." MCL 400.108; MSA 16.490(18). (Emphasis added.)

concluded that nontherapeutic abortions could not be funded under the program because they were not "required" within the meaning of the act. The trial court also considered the validity of the Governor's actions and found:

"that it is lawful and proper for a state to elect not to fund nontherapeutic abortions for the medically indigent, that the proper authority or body to make the determination of whether public funds will be used to fund nontherapeutic abortions is the legislative body; that the Legislature did enact legislation limiting the use of public funds to 'required' medical services; * * * and that the Governor exceeded his authority in the instant controversy."

The trial judge enjoined the Department of Social Services from expending funds for nontherapeutic abortions.

We address first the issue of whether state funding of nontherapeutic abortions is prohibited by MCL 400.108; MSA 16.490(18).

In *People v Bricker,* 389 Mich 524, 528; 208 NW2d 172 (1973), the Court stated:

"It is often said that in construing a statute a court seeks to determine the intent of the Legislature. Frequently there is truthfully no intent because the question concerns a situation not in contemplation when the Legislature acted."

In the present case, truthfully, the instant controversy could not have been contemplated by the Legislature when the act was first passed because the performance of nontherapeutic abortions was a felony at that time.

Under the medical assistance program, the Department of Human Services is delegated the authority to provide certain hospital, physician, and pharmaceutical care, and "other medical and health services as authorized by the state department". MCL 400.109(a), (b), (d) and (e); MSA 16.490(19)(a), (b), (d) and (e). These medical services are rendered upon certification by an attending licensed physician that they are "required for the treatment of an individual" recipient. MCL 400.108; MSA 16.490(18).

Plaintiffs argue and the lower court held, without comment, that "required" means medically necessary and that nontherapeutic abortions cannot come within that term because nontherapeutic by definition means not medically necessary. Defendants maintain that the term "required" has been interpreted by the department as being a procedural check so that state funds will not be spent for medical services which are available under the program but are inappropriate or unnecessary to the successful health care of a particular recipient. Defendants argue that deference must be given to the agency's interpretation.

This Court finds that there is no compelling reason to overturn the agency's interpretation of the statutory language. In fact, that interpretation appears fair and just. *Board of Education of Oakland Schools v Superintendent of Public Instruction,* 401 Mich 37, 41; 257 NW2d 73 (1977). Once having decided what medical and health services to authorize, the department is correct in financing the medical procedures which are needed by a recipient to achieve those health care goals. Nontherapeutic abortion is a procedure which legally may be considered necessary to achieve the medical and health service of preventing the birth of unwanted children, which service the department can lawfully choose to provide. The Court is mindful that it is not called upon to judge whether a nontherapeutic abortion is morally justifiable but rather the Court must make its ruling with the understanding that nontherapeutic abortions are legal.

Having found that the lower court incorrectly concluded that nontherapeutic abortions could not be funded under the medical assistance program, this Court must now consider whether the funding of nontherapeutic abortions is nonetheless prohibited by 1978 PA 417.[2]

1978 PA 417 contains the following language:

"Sec. 1. (1) There is appropriated to the department of social services from the funds designated in this act for the first 3 months of fiscal year 1978-79, ending December 31, 1978, the following amounts:
"MEDICAL SERVICES

| "Hospital services and therapy | $81,208,300 |
| "Physician services | 38,166,300 |
| "Pharmaceutical services | 18,500,000" |

[2] By stipulation of the parties, all arguments regarding 1978 PA 417 apply with equal force to 1978 PA 561.

The next line item (referred to hereinafter as "line item four") which was included in HB 6650 and which provided $1 for nontherapeutic abortions was not enacted as part of 1978 PA 417 after the Governor's veto of that line item.

The Governor's power to veto line items of an appropriations bill is contained in Article 5, Section 19 of the Michigan Constitution of 1963, which provides:

"The governor may disapprove any distinct item or items appropriating moneys in any appropriation bill. The part or parts approved shall become law, and the item or items disapproved shall be void unless re-passed according to the method prescribed for the passage of other bills over the executive veto."

Plaintiffs assert that this power was abused by the Governor when he attempted to use his veto, a negative tool, to achieve an affirmative action. Plaintiffs maintain that a line veto may only be used to eliminate funding and that as used by the Governor the veto was an improper attempt to appropriate vast funds to an item which the Legislature intended to fund only to the extent of one dollar. Plaintiffs maintain in the alternative, that if the veto was valid it eliminated the one dollar appropriated for nontherapeutic abortions and as there was no other money appropriated for that purpose none could be spent. Plaintiffs' argument rests on an interpretation of the bill by which line item four must be held to be excluded from the broader general categories of the prior three line items on the ground that the Legislature's intention as expressed in this bill was to underfund nontherapeutic abortions.

On the other hand, defendants maintain that the legislative intent of line item four of this bill

was not to limit spending for nontherapeutic abortions to one dollar but to symbolize the Legislature's discontent with the Governor's stand by the addition of the token amount. Defendants claim that the Legislature must have intended to allow funding for nontherapeutic abortions because it needed an appropriations bill to obtain Federal funds and it knew that no appropriations bill would be signed by the Governor unless nontherapeutic abortions were funded. In light of the Legislature's inability to muster a two-thirds overriding vote, the Legislature knew that it had to present to the Governor a bill adequately funding nontherapeutic abortions.

This Court believes that the Governor was authorized under Article 5, Section 19, to veto line item four. Because the veto makes the line item void, the line item has no effect upon the status quo. *Board of Education of Oakland Schools v Superintendent of Public Instruction,* 392 Mich 613; 221 NW2d 345 (1974). Thus, the Governor did not achieve an affirmative action but rather, by his veto, maintained the status quo. As the Department of Human Services was funding nontherapeutic abortions prior to this bill, and since the vetoed line has no effect, funding of nontherapeutic abortions can continue.

The trial court is reversed and the injunction set aside.

No costs, a public question.