## BOARD OF EDUCATION OF OAKLAND SCHOOLS v
## SUPERINTENDENT OF PUBLIC INSTRUCTION

1. STATUTES—HOUSE BILL—GOVERNOR—VETO—SCHOOL AID ACT—
    SCHOOLS AND SCHOOL DISTRICTS.

    The Governor's item veto of a section of an Enrolled House Bill
    which provided in part that "[f]rom the amount appropriated in
    section 1 there is appropriated a separate fund of $400,000.00
    for the purpose of providing funds to intermediate districts
    which operate data processing programs, using a service fee
    method of financing on a cooperative basis with local school
    districts as approved by the superintendent of public instruc-
    tion" left intact a part of the school aid act which provides
    "[b]eginning in 1971–72 from the amount appropriated in sec-
    tion 1 there is appropriated a separate fund of $400,000.00 for
    the purpose of providing funds to intermediate districts which
    operate data processing programs, using a service fee method of
    financing on a cooperative basis with local school districts"
    (1970 PA 100, § 16a[5]; 1971 PA 134, § 16a[5]).

2. STATUTES—REPEAL—AMENDMENT—VETO.

    Where an act or part of an act repeals or amends an existing act,
    the veto of the act or part thereof prevents the intended repeal
    or amendment from taking effect; the original act or part of an
    act, which was the subject of the repeal or amendment, re-
    mains valid and in force for want of an effective repeal or
    amendment thereof.

3. STATUTES—SUPREME COURT—LEGISLATURE—INTENT—FINDINGS OF
    FACT.

    The judicial recourse of the Michigan Supreme Court is to ascribe
    to the Legislature what it believes to be the most probable and
    reasonable intention where the Court has no means to make
    findings of fact concerning the legislative intent behind a

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 73 Am Jur 2d, Statutes § 73.
[3, 5] 73 Am Jur 2d, Statutes §§ 272, 274–276.
[4, 5] 73 Am Jur 2d, Statutes § 22.

statute and, at the heart of the controversy, lies legislative intent.

4. STATUTES—AUTHORIZATION—APPROPRIATION—FISCAL YEAR.

Although the Michigan Legislature may at times place authorization provisions and appropriation provisions in the same bill, any provision that does not take initial effect during the ensuing fiscal year is intended to function only as an authorization—an intention to appropriate.

5. STATUTES—SCHOOLS AND SCHOOL DISTRICTS—SCHOOL AID ACT—INTENT—APPROPRIATION.

The most reasonable construction that can be made of the legislative intent behind the enactment of a part of the school aid act which provides "[b]eginning in 1971-72 from the amount appropriated in section 1 there is appropriated a separate fund of $400,000.00 for the purpose of providing funds to intermediate districts which operate data processing programs, using a service fee method of financing on a cooperative basis with local school districts" is to find that this section expressed only a *desire* to appropriate in the future (1970 PA 100, § 16a[5]).

Appeal from Court of Appeals, Division 2, Fitzgerald, P. J., and McGregor and Targonski, JJ., granting mandamus. Submitted June 5, 1974. (No. 8 June Term 1974, Docket No. 55,084.) Decided September 6, 1974.

47 Mich App 760 reversed.

Original complaint in the Court of Appeals by the Board of Education of Oakland Schools against the Superintendent of Public Instruction and the State Treasurer for a writ of mandamus to compel payment of sums of money allegedly due plaintiff pursuant to the school aid act. Writ granted. Defendants appeal. Reversed.

*Cross, Wrock, Miller & Vieson* (by *Andrew A. Paterson*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Robert A.*

*Derengoski,* Solicitor General, and *Eugene Kra-sicky* and *George L. McCargar,* Assistants Attorney General, for defendants.

SWAINSON, J. In 1970 the Legislature amended the title and various sections of 1957 PA 312, commonly known as the school aid act.[1] The amendments contained in 1970 PA 100 were accepted by the Governor and thereafter became the law of this state.[2] Relevant to the case before our Bench today is the language of § 16a(5):

"Sec. 16a

\* \* \*

"(5) Beginning in 1971–72 from the amount appropriated in section 1 there is appropriated a separate fund of $400,000.00 for the purpose of providing funds to intermediate districts which operate data processing programs, using a service fee method of financing on a cooperative basis with local school districts."

In 1971 as a part of its appropriations duties for the 1971–72 fiscal year the Legislature again adopted various amendments to the school aid act. Specifically, the Legislature passed Enrolled House Bill 4886 (1971 PA 134), which contained a new § 16a(5). Section 16a(5) was revised to read:

"Sec. 16a

\* \* \*

"(5) From the amount appropriated in section 1 there is appropriated a separate fund of $400,000.00 for the purpose of providing funds to intermediate districts which operate data processing programs, using a service fee method of financing on a cooperative basis with local school districts as approved by the superintendent of public instruction. Intermediate school districts shall

---

[1] 1957 PA 312 has been repealed and superseded by the School Aid Act of 1972. *See,* 1972 PA 258, § 179.

[2] The 1970 amendments preceded the 1970–71 fiscal year.

apply for and receive funds in accordance with rules promulgated by the state board of education."

The 1971 amendment of § 16a(5) never became law, however, because Governor Milliken invoked his item veto power authorized by 1963 Const, art 5, § 19 and disapproved the $400,000 appropriation in Enrolled House Bill 4886, § 16a(5). See, 1971 Public and Local Acts, p 773. The Legislature took no further action in this area and 1971 PA 134 became law without the inclusion of § 16a(5).

In November of 1971, plaintiff-appellee Board of Education of Oakland Schools concluded on advice of counsel that the Governor's veto of Enrolled House Bill 4886, § 16a(5) had the effect of retaining 1970 PA 100, § 16a(5) as the law of the state. Accordingly, the Board of Education dispatched a letter to appellant Superintendent of Public Instruction requesting "that under the terms of the School Aid Act you proceed to process that portion of the $400,000 payment due Oakland Schools on account of its conduct under the terms of Act No. 100 of the Public Acts of 1970."[3]

The Superintendent of Public Instruction acting pursuant to a written opinion of the Attorney General refused to act on the board of education's request. As demonstrated by the following quotation, the Attorney General believed that, in fact, no fund had been appropriated by the Legislature to carry out the provisions of 1970 PA 100, § 16a(5):

"The nature of these acts must be made clear. Section 16a(5) of the 1970 school aid bill was merely a state-

---

[3] The parties to this appeal have stipulated that appellee School Board did operate data processing programs using its service fee method of financing on a cooperative basis with 29 local school districts in the fiscal year 1971–72.

ment of intent by the legislature and certainly was not binding on them without further legislative action. Likewise, the governor was in no way bound by signing the 1970 school aid bill, except as it affirmed the legislature's intent to make an appropriation in the future. It is clear that without further legislative action in 1971, the 1970 provision for data processing would have been of no effect whatsoever. The legislature put life into the 1970 provision when it passed section 16a(5) of the 1971 school aid bill. The governor was then completely free to consider the appropriation made and act as he deemed advisable without regard to his previous action on the 1970 bill. He chose to veto the appropriation. His previous action of signing the 1970 school aid bill, including the intent of the legislature to make a data processing appropriation in 1971, in no way limited his alternative courses of action on the 1971 provision."

After its request was denied, the School Board filed a petition and complaint for a writ of mandamus in the Court of Appeals seeking an order requiring the appellants herein to "distribute and deliver" to the School Board its proper share of the funds it believed had been appropriated under § 16a(5) of the school aid act for the 1971–72 school year. Such relief was granted by the Court of Appeals, *Board of Education of Oakland Schools v Superintendent of Public Instruction,* 47 Mich App 760; 209 NW2d 857 (1973), and this Court subsequently granted leave to appeal. 390 Mich 799 (1973).

As outlined in the above stated facts, the present controversy centers on the interpretation of 1970 PA 100, § 16a(5) and the effect thereon of the Governor's veto of Enrolled House Bill 4886, § 16a(5). Appellants through their counsel, the Attorney General, argued that by law and tradition educational appropriations are made on a

year by year basis.[4] From this premise the Attorney General repeats the argument advanced in his above quoted opinion that 1970 PA 100, § 16a(5) was merely an expression of intent to appropriate —not an appropriation. The actual appropriation was passed the following year in Enrolled House Bill 4886, § 16a(5), but was vetoed and never became law. The Legislature took no further action to carry out its earlier expressed intention and consequently no actual appropriation was ever made.

Appellee School Board argues that after the Governor vetoed § 16a(5) of Enrolled House Bill 4886, 1970 PA 100, § 16a(5) remained the law of the state. A veto, appellee points out, could not repeal an already enacted law, and since the new § 16a(5) had not been finally approved, it did not act to repeal the former § 16a(5) by implication. Since, in appellee's opinion, there is no requirement that all appropriations be made yearly, the previously adopted appropriation of 1970 PA 100 went into effect in the 1971–72 school year.

---

[4] "Under Michigan law as it has existed since the adoption of the 1963 Constitution, the 'ensuing fiscal period' is the state's fiscal year commencing July 1 and closing June 30. First, this is the fiscal period established by statute. MCLA 21.91; MSA 3.561. Second, the time fixed by law for the submission of the executive budget is annually, within 10 days after the legislature convenes in regular annual session. MCLA 21.6; MSA 3.286. Third, the State School Aid Act is phrased in terms of an annual appropriation for a fiscal year ending June 30. MCLA 388.611; MSA 15.1919(51). Fourth, appropriations from the general fund to make up deficiencies in the state school aid fund are made on an annual basis. 1966 PA 285, § 17. 1967 PA 240, § 15. 1968 PA 312, § 12. 1969 PA 307, § 12. 1970 PA 84, § 12. 1971 PA 120, § 13a. Last, 1965 PA 95, § 2; MCLA 21.252; MSA 3.583(2), provides that '[a]t the close of the fiscal year the unencumbered balance of each appropriation lapses and reverts to the state fund from which it was appropriated.'

"Although it is at least arguable that the legislature could establish an 'ensuing fiscal period' other than the fiscal year, the fact remains that under current law the 'ensuing fiscal period' is the fiscal year, and appropriation is an annual process." (Appellants' brief, pp 17–18).

As a threshold issue we agree with appellee's position that the Governor's veto of Enrolled House Bill 4886, § 16a(5) left 1970 PA 100, § 16a(5) intact. The Supreme Court of Washington facing a similar issue under its own state's laws set forth a general argument that applies equally well to Michigan.

"Where an act or part of an act repeals or amends an existing act, the veto of the act or part thereof prevents the intended repeal or amendment from taking effect. The original act or part of an act, which was the subject of the repeal or amendment, remains valid and in force for want of an effective repeal or amendment thereof. Such a veto does not leave the kind of a void in the subject of the act for which the appellants contend. Such a result could occur only where the act vetoed was an original act unrelated to any existing legislation." *State v Rosellini,* 55 Wash 2d 554, 559; 348 P2d 971, 973 (1960).

Our conclusion that 1970 PA 100, § 16a(5) remained intact does not however lead directly to any resolution of the present case. If the appellants are correct, 1970 PA 100, § 16a(5) was merely an intention to appropriate and retained that status when carried forward into 1971. Under appellee's theory an appropriation was adopted in 1970 and became operational in 1971.

At the heart of this controversy lies legislative intent. If we were able to make findings of fact concerning the legislative intent behind 1970 PA 100, § 16a(5), our task today would be a simple one indeed. The reality is, however, that in the present case we have no means available for fact-finding. Our judicial recourse is to ascribe to the Legislature what we believe to be its most probable and reasonable intention. *Crary v Marquette Circuit Judge,* 197 Mich 452, 454; 163 NW 905 (1917);

*Magnuson v Kent County Board of Canvassers,*
370 Mich 649, 657; 122 NW2d 808 (1963).

The Michigan Legislature does not employ a
uniform budgetary process such as that used by
the United States Congress. Under the congres-
sional scheme there would be no doubt present con-
cerning the intended purpose of a budgetary provi-
sion.

"A fundamental characteristic of the congressional
budget process is the distinction between *authorization*
and *appropriation.* Authorization is accomplished by
the substantive legislative committees (Agriculture, In-
terstate Commerce, Foreign Affairs, and so forth) and
involves setting a ceiling of expenditure for substantive
governmental programs. Substantive committee autho-
rizations for programs 'may be open-ended, requiring no
further action by the legislative committee; they may
be multi-year or lump sum, expiring when either the
time or expenditure limitation is exceeded; or they may
be annual—i.e., requiring action by the legislative com-
mittee concerned *each* fiscal year.' Programs must be
authorized before funds can be appropriated for their
implementation. The appropriations committees allo-
cate funds to be expended for programs already autho-
rized." (Footnote omitted.) M. Jewell & S. Patterson,
*The Legislative Process in the United States* (2d ed,
1973), 525.

Although the Michigan Legislature may at times
place authorization provisions and appropriation
provisions in the same bill, we believe that any
provision that does not take initial effect during
the ensuing fiscal year is intended to function only
as an authorization—an intention to appropriate.[5]
The dynamics of the budget change from year to
year on the basis of the revenues derived and the

[5] We do not address herein the validity of what appellee describes
as a continuing appropriation—an appropriation that takes effect in
the ensuing fiscal year and by its terms continues to appropriate
beyond that fiscal period.

expenditures required by the people of Michigan. Responsible fiscal policy consequently also requires a yearly reassessment of revenues, spending goals and priorities.

The Michigan Constitution of 1963 brought to this state new measures designed to require an annual review of the budget and to provide for annual fiscal accountability in both the legislative and executive branches. See, Const 1963, art 4, § 31 and art 5, § 18 and the "Convention Comment" accompanying each section. To construe 1970 PA 100, § 16a(5) as urged by appellee would violate the spirit if not the letter of these constitutional provisions. The Legislature would be, in effect, appropriating in advance of its ability to accurately forecast available revenues and would thereby be unable to match revenue with appropriations as required by Const 1963, art 4, § 31. In addition, such prospective appropriations would force the Governor to approve or veto the expenditure far in advance of his ability to assess the fiscal needs of the state. See generally, Const 1963, art 5, §§ 18 and 19. We do not believe that the Legislature intended either of these results.

In sum, we believe that the most reasonable construction that can be made of the legislative intent behind the enactment of 1970 PA 100, § 16a(5) is to find that this section expressed only a *desire* to appropriate in the future. This construction avoids any conflict with the constitutional requirements binding upon both the Legislature and the Governor, and, in our opinion, furthers the comity between these two branches that is necessary for the responsible functioning of the state government.

The order of the Court of Appeals is vacated and plaintiff-appellee's prayer for mandamus is denied.

No costs, a public question being involved.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, WILLIAMS, LEVIN, and M. S. COLEMAN, JJ., concurred with SWAINSON, J.

J. W. FITZGERALD, J., did not sit in this case.