FREDERICK v PRESQUE ISLE COUNTY CIRCUIT JUDGE

Docket No. 90310. Argued March 7, 1991 (Calendar No. 8). Decided
    September 30, 1991. Rehearing denied *post,* 1204.

    James A. Frederick, a private attorney appointed by the 26th
    Circuit Court to defend an indigent criminal defendant on
    appeal, filed a complaint for superintending control in the
    Court of Appeals to compel the Chief Judge of the 26th Circuit
    Court to authorize payment for his services. Presque Isle
    County intervened as a defendant. The Court of Appeals,
    MACKENZIE, P.J., and SAWYER and R. B. BURNS, JJ., dismissed
    the complaint in an opinion per curiam, finding that there was
    no clear legal duty on the part of the 26th Circuit Court to
    compensate the plaintiff (Docket No. 126643). The plaintiff
    appeals, seeking a determination of which government entity is
    responsible for compensating private attorneys assigned to
    represent indigent criminal defendants in appealing their con-
    victions.

    In an opinion by Justice MALLETT, joined by Chief Justice
CAVANAGH and Justices LEVIN and BRICKLEY, the Supreme
Court *held:*

    Counties are responsible for compensating private attorneys
assigned to represent indigent defendants in appealing their
convictions. The Chief Judge of the 26th Circuit Court is
directed to enforce payment for plaintiff's services.

    1. An indigent defendant is entitled to the assistance of
counsel in an appeal of right. Criminal proceedings against a
defendant begin at the point of arraignment and continue
through the appeal of right. Counties are required to bear the
expenses of the criminal justice system, including payment of
fees for attorneys appointed by the court to defend persons who
cannot procure counsel for themselves throughout all stages of
criminal prosecution. Thus, where an attorney is ordered by a
court to represent a defendant on appeal, the county is subject

REFERENCES
Am Jur 2d, Appeal and Error § 345; Attorneys at Law §§ 243, 244.
Construction of state statutes providing for compensation of attor-
    ney for services under appointment by court in defending indi-
    gent accused. 18 ALR3d 1074.

to the expense of the appeal. Only where an attorney seeks to represent a defendant on appeal without an order from the court is the county absolved from its financial responsibility.

2. A complaint for superintending control may be filed when there is no other adequate remedy. In this case, the plaintiff could not appeal the circuit court's decision because that decision was not an order of the circuit court, but rather was a letter submitted by the court's administrator. Thus, a complaint for superintending control was proper. The standard for issuing a writ of superintending control is to determine whether the lower court failed to perform a clear legal duty. Because the common law and MCL 775.16; MSA 28.1253 clearly establish the county's responsibility to pay assigned attorneys under Administrative Order No. 1989-3 to pursue an appeal for an indigent defendant, the Chief Judge of the 26th Circuit Court had a clear legal duty to order the county's compensation of assigned appellate attorneys. Because the chief judge failed to perform this duty, the Court of Appeals should have granted the writ for superintending control.

Justice BOYLE, joined by Justice RILEY, concurring, stated that the constitution confers on trial courts responsibility for appointment of appellate counsel. Const 1963, art 1, § 20 and statutes providing for the appointment of trial counsel and creating the Appellate Defender Commission may be harmonized to guarantee an appeal for an indigent criminal defendant and that locally elected trial judiciary will provide counsel.

In this case, because the trial court had the authority to appoint the plaintiff, he is entitled to reasonable compensation. Administrative Order No. 1989-3, which directs compliance with § 3 of the Appellate Defender Commission regulations, does not provide those regulations the force of law. It only may be said that it is the Michigan Constitution and MCL 780.712; MSA 28.1114(102) that repose this authority in the trial court. Still unresolved is the question whether the state intended to assume responsibility for the payment of assigned appellate counsel. Assuming the system now in effect is that intended by the state, the question remains whether the system violates the strictures of Const 1963, art 9, § 29, prohibiting the Legislature from requiring a new activity or service of local government or an increase in the level of such activity or service, without appropriating funds to pay the unit of local government for any necessary increased costs.

Reversed.

Justice GRIFFIN, concurring in part and dissenting in part,

stated that until the state moves to meet its commitment to provide statewide funding for state courts, the counties will be left to continue bearing this expense.

The majority's holding should be qualified by § 6(c) of the Appellate Defender Act, MCL 780.716(c); MSA 28.1114(106)(c), which requires the state to bear financial responsibility for at least twenty-five percent of the total criminal defense appellate cases for indigent defendants pending in the appellate courts. Because the appointment of appellate counsel for indigent criminal defendants is constitutionally required, cutbacks in funding by the state for the State Appellate Defender Office for this purpose have had the effect of shifting to, and increasing the burden on, the counties. Section 6(c), although permitting SADO to adjust its caseload so as to insure quality, extends such flexibility only to that portion of the caseload that exceeds the twenty-five percent minimum.

The problem properly is one for legislative resolution. Full state funding is consistent with the mandate of Const 1963, art 6, § 1 for "one court of justice"; 1980 PA 438, providing for full state funding of all state courts by 1988; and the trend in sister states.

186 Mich App 20; 463 NW2d 438 (1990) reversed.

APPEAL — INDIGENTS — ATTORNEY FEES.

Counties are responsible for compensating private attorneys assigned to represent indigent defendants in appealing their convictions (MCL 775.16; MSA 28.1253).

*James A. Frederick,* in propria persona.

*Joseph P. Swallow,* Chief Judge, 26th Circuit Court, in propria persona.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Donald J. McLennan,* Prosecuting Attorney, for the intervening defendant.

Amici Curiae:

*Michael E. Kobza,* 14th Circuit Judge, and *Kurt N. Hansen* for Michigan Judges Association.

*Douglas R. Mullkoff* for Criminal Defense Attorneys of Michigan.

*James K. Robinson* for the State Bar of Michigan.

*Barbara R. Levine* and *Edward A. Meany* for Michigan Appellate Assigned Counsel System.

*Dennis O. Cawthorne* for Michigan Association of Counties.

*Kraizman & Kraizman* (by *Jack J. Kraizman*) and *Gerald M. Lorence,* President, Recorder's Court Bar Association, for Recorder's Court Bar Association.

MALLETT, J. We granted leave to determine which government entity is responsible for compensating private attorneys assigned to represent indigent criminal defendants in appealing their convictions. We hold that the counties remain responsible for this cost, and reverse the decision of the Court of Appeals.

FACTS

This dispute arose out of the legal representation in a criminal case in which the plaintiff-appellant, Mr. James A. Frederick, represented a criminal defendant in the appeal of his conviction. Judge Robert Ferguson of the 26th Circuit Court appointed the plaintiff-appellant as the appellate counsel for the indigent defendant, Mr. David Cook, on May 10, 1989. On that same day, the court administrator for the 26th Circuit Court sent Mr. Frederick a form letter, informing him that

the court did not intend to compensate him for his services.[1]

Mr. Frederick performed various services in his capacity as appellate counsel, and on September 5, 1989, he submitted a bill to the county requesting payment for services and expenses incurred in the amount of $312.15.

The court administrator wrote Mr. Frederick on October 5, 1989, again informing him that the court's budget did not contain funds to compensate him for his services. She requested that Mr. Frederick inform her of any authority designating who is responsible for paying assigned appellate attorneys.

The plaintiff's counsel demanded payment in two letters to the court administrator, dated October 12, 1989, and October 17, 1989. Again, payment was refused in a letter which stated that there was no authority designating the county as the governmental entity responsible for compensating assigned appellate counsel.

On March 8, 1990, the plaintiff filed in the Court of Appeals a complaint for superintending control to compel the defendant, the Chief Judge of the 26th Circuit Court, to authorize payment to the plaintiff for his appellate services ordered by the 26th Circuit Court on May 10, 1989. The Court of Appeals dismissed the complaint, finding there was no clear legal duty on the part of the defen-

---

[1] The relevant text of the letter follows:

> [P]ursuant to Administrative Order 1989-3, an ORDER of this Court has been entered appointing you Defendant's counsel on appeal and pursuant to statute a trial transcript shall be provided.
>
> Our budget does not presently contain funds to compensate you for your service nor am I aware of any statutory authority designating a governmental entity to make payment in this regard.

dant to compensate the plaintiff. 186 Mich App 20;
463 NW2d 438 (1990).

The plaintiff appealed this dismissal, and we
granted leave to appeal on November 13, 1990.
437 Mich 856.

I

Neither party disputes the fact that an indigent
defendant is entitled to have the assistance of
counsel upon an appeal of right, guaranteed by the
Fourteenth Amendment of the United States Con-
stitution. See *Douglas v California,* 372 US 353; 83
S Ct 814; 9 L Ed 2d 811 (1963). What is at issue in
this case is whether the county is responsible for
funding the costs and fees of private attorneys
assigned by the court to represent indigent crimi-
nal defendants on appeal.[2]

A

Traditionally, the county has been the primary
unit in directing Michigan's criminal justice sys-
tem.

[J]udicial circuits are drawn along county lines
and counties are required by statute to bear the
expenses of certain courtroom facilities ([MCL
600.551] MSA 27A.551), [repealed] circuit court
commissioner salaries ([MCL 600.1067] MSA
27A.1067), stenographer's salaries ([MCL 600.114]
MSA 27A.114), juror's compensation ([MCL
600.1231] MSA 27A.1231), and fees for attorneys
appointed by the court to defend persons who
cannot procure counsel for themselves ([MCL
775.16] MSA 28.1253). [OAG, 1967-1968, No 4,588,
pp 49, 50 (June 12, 1967).]

[2] The total costs and fees for the state in 1989 was approximately
$1,673,000. Almost sixty percent was attributable to the Wayne,
Macomb, and Oakland Circuit Courts and the Detroit Recorder's
Court.

As early as 1894, this Court addressed the financial obligation of a county as it relates to appellate expenses. In *People v Hanifan,* 99 Mich 516, 517; 59 NW 611 (1894), the Court stated that it was within the province of the county, rather than the state, to fix an attorney's compensation for services rendered on appeal. This conclusion was based on Const 1850, art 10, § 10, which granted the county board of supervisors exclusive power to fix the compensation for all services rendered for the county.[3]

An 1857 statute provided that if an attorney appointed to defend an indigent defendant followed the case to the Supreme Court on appeal, he was entitled to an enlarged compensation.[4] The *Hanifan* Court held that neither the trial court nor the appellate court should fix his compensation, but that this should be done by the county board of auditors. *Id.* at 518.

Three years later, this Court reaffirmed its earlier *Hanifan* position that counties were responsible for the expenses of appointed attorneys' compensation for services rendered on appeal. In *De Long v Muskegon Co Bd of Supervisors,* 111 Mich 568; 69 NW 1115 (1897), the Court held that an attorney appointed to defend an indigent person charged with a criminal offense was not entitled to

---

[3] This provision is now found at Const 1963, art 7, § 9. The revised provision vests the county with the exclusive power to fix the compensation of county officers.

[4] The 1857 Legislature recognized the need to compensate counsel for work in cases wherein counsel pursued appellate review to the Supreme Court. 1857 PA 109, § 2, which has been consistently reenacted, now appears as MCL 775.17; MSA 28.1254, which provides:

An attorney shall not, in such case, be compelled to follow a case into another county or into the supreme court, but if he does so, may recover an enlarged compensation to be fixed by the court.

compensation from the public for services in appealing a judgment of conviction when he undertook the appeal of his own accord and without a court order. In reaching this conclusion, the *De Long* Court said:

> No attorney can defend a prisoner, and subject the county to pay for such expense, without an order of the court. It is the duty of the circuit judge to examine into the circumstances, and determine whether it is his duty to appoint an attorney to defend at the *expense of the county.* The order of the circuit court is the sole authority for subjecting the *county* to the expense of the prisoner's defense. [2 How Stat] Section 9047 means this, *and nothing more* . . . . [*Id.* at 570. Emphasis added.][5]

*De Long* still stands for the proposition that counties are absolved from their financial obligation of assuming appellate expenses only when an attorney seeks to represent a defendant on appeal without an order from the court. Where an attorney has an order from the court compelling representation of a defendant on appeal, § 9047 subjects the county to the expense of the appeal.

*De Long* is an 1897 case, decided long before criminal defendants were granted the constitutional right to an appeal. However, *De Long* remains illustrative. Counties paid appellate attorney fees when the court granted an order allowing the attorney to make an appeal. We believe it follows that counties should continue to pay appellate attorney fees when the constitution in effect grants an order allowing criminal conviction ap-

---

[5] Section 9047 is the citation of 1857 PA 109, § 2, the statutory predecessor of MCL 775.17; MSA 28.1254, one of the relevant statutory provisions in this case.

peals.[6] Pursuant to the Michigan Constitution and under Administrative Order No. 1989-3, trial courts are under a duty to grant an order assigning appellate counsel for an indigent criminal defendant.[7] Administrative Order No. 1989-3 requires that assignment and payment of appellate counsel remain a local matter.[8]

In *In re Meizlish,* 387 Mich 228; 196 NW2d 129 (1972), this Court held that a local court rule which limited the fees the county would pay for assigned counsel did not violate an attorney's rights under the Due Process and Equal Protection Clauses of the United States or Michigan Constitution. Whether the federal or state constitution requires a public entity to compensate assigned attorneys is not an issue presently before us. Rather, the issue is one of statutory interpretation.[9]

---

[6] Const 1963, art 1, § 20 grants to a criminal defendant an appeal as a matter of right.

[7] Under Administrative Order No. 1989-3(5)(b)(iv), the local designating authority or chief judge of the circuit may sanction an attorney who refuses an assignment without cause, by rotating that attorney's name to the bottom of the roster.

[8] Indeed, some members of this Court were concerned about costs to be borne by local governments:

> Nor has there been any independent examination of those states that have such a system to determine the fiscal implications for local governments which will bear the cost of the system. [Administrative Order No. 1989-3, 432 Mich cxxviii, BOYLE, J., dissenting.]

[9] In *Meizlish,* the court rule awarded a maximum of $50, which was paid attorney Meizlish. The Court held that "in general, the court rule does provide reasonable compensation for court appointed attorneys for indigents." 387 Mich 235-236. Thus, the issue before the Court was not whether assigned attorneys could be paid no compensation, but rather whether $50 was generally reasonable, and not arbitrary and capricious so as to violate the attorney's rights to due process and equal protection.

While we decline to discuss these constitutional issues, we do note that, in light of MCL 775.16; MSA 28.1253 as interpreted by us today and Administrative Order No. 1989-3, paying assigned appellate attorneys no fees is not reasonable.

**B**

While the Appellate Defender Act, MCL 780.711 *et seq.*; MSA 28.1114(101) *et seq.,* and Administrative Order No. 1989-3 provide for a system of indigent appellate representation that involves private attorneys as well as the State Appellate Defender Office, both are silent as to the payment of these private attorneys. MCL 775.16; MSA 28.1253 is not. It provides that the county treasurer must compensate an attorney for his services in representing an indigent criminal defendant. When an accused is unable to procure counsel

> [u]pon proper showing, the chief judge shall appoint . . . an attorney to conduct the accused's examination and to conduct the accused's defense. *The attorney appointed by the court shall be entitled to receive from the county treasurer* . . . reasonable compensation for the services performed. [Emphasis added.]

The defendants in this case argue that the language of MCL 775.16; MSA 28.1253 indicates that the county is responsible for compensating only trial attorneys because the term "accused" only applies to defendants at the trial level. They contend that the term "accused" does not apply to convicted defendants appealing their conviction. This argument is unpersuasive for several reasons.

First, while the term "accused" does technically apply only to those not yet convicted, its common meaning includes all those being prosecuted, throughout all stages of the criminal process. Indeed, the Michigan Constitution of 1963 uses "accused" in referring to a postconviction defendant: "In every criminal prosecution, the *accused* shall have . . . an appeal as a matter of right . . . ." Const 1963, art 1, § 20 (emphasis added).

Second, when MCL 775.16; MSA 28.1253 was first enacted in 1857, there was no appeal of right; it was solely discretionary with the appellate court. However, the 1963 Constitution provides that every defendant is entitled to an appeal in the Court of Appeals. Const 1963, art 1, § 20. The Fourteenth Amendment of the United States Constitution makes it clear that a state may not grant appellate review in such a way as to discriminate against some convicted defendants because of their poverty. *Douglas v California, supra.*

Because the appeal is now a right of the defendant, it constitutes a basic and significant part of the accused's defense. The state's criminal proceedings against this individual begin at the point of arraignment and continue throughout the appeal of right. Thus, the defense must address each stage of these proceedings.

Third, the county is responsible for providing counsel for indigent suspects who are questioned by the police; at this "Miranda stage" the suspect has not been charged and so is not an "accused." *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Nonetheless, the county pays for the suspect's counsel if the suspect requests that an attorney be made available to him.

Furthermore, the term "defense" as used in MCL 775.16; MSA 28.1253 includes all proceedings in which a criminal defendant can assert a defense, including errors made in the trial court. This is so, particularly with proceedings made available to the defendant by right, such as the appeal of right in the Court of Appeals.

Black's Law Dictionary (5th ed), p 377, defines "defend" as "[t]o contest and endeavor to defeat a claim . . . made against one in a court of justice." An appellate attorney attempts to contest and

defeat a claim as much as a trial attorney does. As
a California court noted:

> An appeal is merely a continuation of the ear-
> lier proceedings . . . under the common and usual
> meaning of the word "defend," that assigned coun-
> sel in the appellate department . . . is "defend-
> ing" his client . . . . [*Marks v Los Angeles Co
> Superior Court*, 245 Cal App 2d 779, 783; 54 Cal
> Rptr 169 (1966).][10]

C

The parties point to other statutory positions to
support their respective positions, and we address
each separately. MCL 775.17; MSA 28.1254 states
that an attorney cannot be forced to make an
appeal to the Supreme Court. This case does not
involve the discretionary appeal to the Supreme
Court, but rather only involves paying the costs
and fees of an indigent defendant's appeal of right.
Further, at the time of its enactment there was
only the discretionary appeal to the Supreme
Court. There was no Court of Appeals nor an
appeal of right. Thus, this statute does not provide
for payment of an assigned appellate attorney.

The defendant argues that unless trial counsel is
the one to provide appellate services, MCL 775.18;
MSA 28.1255 prohibits two attorneys from receiv-
ing compensation in one case.[11] We disagree with
this construction of § 18. The plain meaning of this
statute is to prevent two attorneys from collecting
funds for performing identical and repetitive ser-
vices. Otherwise, if one attorney began the trial,

---

[10] See also *Powell v United States*, 60 F Supp 433, 439 (ED Va,
1945), aff'd 152 F2d 228 (CA 4, 1945), aff'd 330 US 238 (1947).

[11] Only one attorney in any one case shall receive the compen-
sation above contemplated . . . .

but had to withdraw for whatever reason, certainly it cannot be argued that substitute counsel could not receive compensation. Assigned appellate counsel are, in one sense, substitute counsel on appeal. They take over where the trial counsel ended. Assigned appellate counsel do not receive compensation for services already performed by the trial counsel, and thus do not violate MCL 775.18; MSA 28.1255.[12]

Further, under MCL 49.159(1); MSA 5.757(1), the county rather than the state pays the prosecuting attorney, including the prosecution on appeal. MCL 49.159(1); MSA 5.757(1) provides:

> The prosecuting *attorney* shall receive compensation for *his or her* services, as the *county* board of *commissioners,* by an annual salary or otherwise, *orders* and *directs.* [Emphasis added.]

Prosecutors and defense attorneys are adversaries, but both perform similar functions for their respective clients. That prosecutors are more popular than defendants is not enough reason for a county to abandon certain costs to the state.

Nor does MCL 600.9947; MSA 27A.9947 support the contention that the Legislature intended that the state would assume the responsibility for paying assigned appellate attorneys. Section 9947 provides:

> (1) The legislature shall appropriate sufficient funds in order to fund:

> \* \* \*

---

[12] As amicus curiae Michigan Appellate Assigned Counsel System informed us, in most instances indigent defendants are provided with a new attorney on appeal. However, if the defendant prefers that his trial attorney perform appellate services and the trial attorney agrees, the defendant may waive new counsel. Administrative Order No. 1989-3(12).

(e) At least 100% of all court operational expenses in the state fiscal year beginning October 1, 1988.

Section 9947 manifests the Legislature's intention to reorganize the court system; the subsections of § 9947 "at most, merely express an intention of the Legislature with regard to appropriations which will be made in future years." OAG, 1983-1984, No 6,125, pp 38, 40 (February 10, 1983). This intention, however, is not binding on subsequent Legislatures:

> [A]ny provision that does not take initial effect during the ensuing fiscal year is intended to function only as an authorization—an intention to appropriate. [*Oakland Schools Bd of Ed v Superintendent of Public Instruction,* 392 Mich 613, 620; 221 NW2d 345 (1974).]

One legislature cannot limit the power of successor legislatures to appropriate funds. *Harsha v Detroit,* 261 Mich 586, 590; 246 NW 849 (1933); *Atlas v Wayne Co Bd of Auditors,* 281 Mich 596; 275 NW 507 (1937). Because § 9947 was enacted in 1980 and became effective on September 1, 1981, it cannot bind the Legislature with regard to 1988 appropriations. Therefore, the promise or intention expressed in MCL 600.9947; MSA 27A.9947 is not binding and cannot compel the state to assume the responsibility for paying the fees of assigned appellate attorneys.[13]

II

Under MCR 3.302, a complaint for superintending control may be filed when there is no other

---

[13] Since the outcome of this case between these parties would not be affected by Const 1963, art 9, § 29, we do not address that question.

adequate remedy. In this case, the plaintiff could not appeal the circuit court's decision because that decision was not an order of the circuit court, but rather a letter submitted by the court's administrator. The circuit court issued no judgment or order which the plaintiff could appeal, and thus a complaint for superintending control was proper.

The standard for issuing a writ of superintending control is to determine whether the lower court failed to perform a clear legal duty. *People v Flint Municipal Judge,* 383 Mich 429; 175 NW2d 750 (1970). Because we determine that our common law and MCL 775.16; MSA 28.1253 clearly establish the county's responsibility for paying assigned appellate attorneys, under Administrative Order No. 1989-3, the Chief Judge of the 26th Circuit Court has a clear legal duty to order the county's compensation of assigned appellate attorneys. Because the chief judge failed to perform this duty in this case, we hold that the Court of Appeals should have granted the writ for superintending control.

### CONCLUSION

All courts in this state are part of Michigan's one court of justice, Const 1963, art 6, § 1. However, the Legislature retains power over the county and may delegate to the local governments certain powers. See, e.g., *Alan v Wayne Co,* 388 Mich 210; 200 NW2d 628 (1972); *Wright v Bartz,* 339 Mich 55; 62 NW2d 458 (1954); Const 1963, art 7, § 1. In MCL 775.16; MSA 28.1253, the Legislature did just that. It directed the chief judge of the circuit court to appoint an attorney to represent an indigent defendant's defense, and directed the county to pay for such services.

We reverse the decision of the Court of Appeals,

and direct the Chief Judge of the 26th Circuit Court to enforce payment for plaintiff's services.

CAVANAGH, C.J., and LEVIN and BRICKLEY, JJ., concurred with MALLETT, J.

BOYLE, J. I concur in Justice MALLETT's result. Mr. Frederick was appointed to serve as "criminal appellate defense counsel . . . by the trial court from the roster provided by the commission . . . ." MCL 780.712(6); MSA 28.1114(102)(6). The trial court was authorized to certify a fee to the funding unit and Mr. Frederick is therefore "entitled to receive from the county treasurer . . . reasonable compensation for the services performed." MCL 775.16; MSA 28.1253.

However, this conclusion is only the beginning of the necessary inquiry. The controversy involves the familiar struggle between local and state government for dwindling resources and the Legislature's contemplated but unfulfilled intention to finance the court system on a statewide basis, MCL 600.101 *et seq.*; MSA 27A.101 *et seq.* Moreover, the backdrop of the case cannot be understood without acknowledging this Court's administrative orders involving the Appellate Defender Commission, AO 1981-7 and 1985-3, and its ultimate directive to trial courts to appoint appellate counsel pursuant to the regulations adopted by the commission, AO 1989-3.

I

The constitutional imprimatur for authority in the trial court to appoint appellate counsel has been long established. The Michigan Constitution of 1908 guaranteed a defendant the assistance of counsel for defense, "and in courts of record, when

the trial court shall so order, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal." Const 1908, art 2, § 19.

The Michigan Constitution of 1963, art 1, § 20, provided an appeal as of right. As originally adopted, it carried forward nearly identical language to that of Const 1908, art 2, § 19, that is, "and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."[1]

The constitution thus confers the responsibility for the appointment of appellate counsel to the trial courts.

Article 6, § 10 also provides:

> The jurisdiction of the court of appeals shall be provided by law and the practice and procedure therein shall be prescribed by rules of the supreme court.

Following adoption of the constitution, the Legislature, in the Revised Judicature Act, defined the jurisdiction of the Court of Appeals:

> All final judgments from the circuit court, court of claims, and recorder's court . . . . [MCL 600.308(1)(a); MSA 27A.308(1)(a).]

1961 PA 236[2] authorized the Michigan Supreme Court to promulgate general rules governing practice and procedure in the Supreme Court and all other courts of record. The provision did not refer to rules regarding the appointment of counsel.

Between 1963 and 1980, MCL 775.16; MSA

---

[1] The language added by amendment ratified August 8, 1972, effective September 23, substituted "and as provided by law" for "and in courts of record." No evidence exists that it was intended to limit trial court authority.

[2] Amended by 1974 PA 297, MCL 600.223; MSA 27A.223.

28.1253 was reenacted without change. 1980 PA
506 amended MCL 775.16; MSA 28.1253:

> Upon proper showing, the chief judge shall ap-
> point or direct the magistrate to appoint an attor-
> ney to conduct the accused's examination and to
> conduct the accused's defense. The attorney ap-
> pointed by the court shall be entitled to receive
> from the county treasurer, on the certificate of the
> chief judge that the services have been rendered,
> the amount which the chief judge considers to be
> reasonable compensation for the services per-
> formed.

MCL 775.17; MSA 28.1254, referring to an attor-
ney's right to receive compensation if he follows
the case into the Michigan Supreme Court, and
MCL 775.18; MSA 28.1255, providing that "[o]nly
one attorney in any one case shall receive the
compensation" contemplated above, have not been
amended since the 1963 Constitution. All appear
in the Penal Code.

In 1978, the Appellate Defender Commission
was created. It was charged with the responsibility
for development of a system of indigent appellate
services which was to include "locally appointed
private counsel," MCL 780.712(4); MSA
28.1114(102)(4), and the creation of a statewide
roster of attorneys eligible for and willing to ac-
cept appointment by an appropriate court. The act
further provides, "The appointment of criminal
appellate defense services for indigents shall be
made by the trial court from the roster provided
by the commission or shall be referred to the office
of the state appellate defender." MCL 780.712(6);
MSA 28.1114(102)(6).

Notably, although the Legislature authorized
the commission to develop standards for the per-
formance of services to the indigent, the act con-

tains no authorization for the development of regulations. Moreover, the Legislature did not purport to limit the authority of the trial court to appoint counsel except to provide that counsel shall be roster certified.

Two other statutes must be noted. The same act that amended MCL 775.16; MSA 28.1253, titled in part "[a]n act . . . to provide for procedure relating to new trials and appeals in criminal . . . cases," amended MCL 770.3(1)(a); MSA 28.1100(1)(a) to provide a right to appeal from final judgment or trial order:

> In a felony or misdemeanor case tried in the circuit court, recorder's court of the city of Detroit, or traffic and ordinance division of the recorder's court of the city of Detroit, there shall be a right of appeal to the court of appeals, within 60 days after the entry of judgment or after the entry of an order appointing appellate counsel for an indigent defendant pursuant to supreme court rule, or within 60 days after the entry of an order denying a motion for new trial where the motion is timely filed as prescribed in section 2(1) of this chapter. [1980 PA 506, ch X, § 3(1)(a).]

Finally, § 9947 of the court reorganization act, also enacted in 1980, 1980 PA 438, declared that "[t]he legislature shall appropriate sufficient funds in order to fund . . . [a]t least 100%" of all court operational expenses beginning October 1, 1988. MCL 600.9947(1)(e); MSA 27A.9947(1)(e).

The applicable court rule is MCR 6.425(F)(1)(a), which, like its predecessor, GCR 1963, 785.11(2), simply provides that "[i]f the defendant is indigent, the court must promptly enter an order appointing a lawyer."

Noting that there is no constitutional right to payment of appointed counsel, the respondent

judge submits that there is no statutory authority compelling compensation but, rather, that MCL 775.16 *et seq.*; MSA 28.1253 *et seq.,* links the right to compensation to "informed permission from the trial court," or that appellate counsel be the same attorney that was appointed as trial counsel. MCL 775.17, 775.18; MSA 28.1254, 28.1255. The respondent thus contends that he is without authority to impose a charge on the county either because he has not made a finding that the appeal is meritorious, or because MCL 775.17, 775.18; MSA 28.1254, 28.1255 require the appointment of trial counsel and limit compensation to one attorney.

The plaintiff and amicus curiae Michigan Appellate Assigned Counsel System submit that the statutes appearing in the Code of Criminal Procedure, MCL 775.16-775.18; MSA 28.1253-28.1255, are not inconsistent with the Appellate Defender Act, MCL 780.711 *et seq.*; MSA 28.1114(101) *et seq.*

> To the extent the early statutes provide for county funding of private attorneys appointed by trial courts, the Act is not inconsistent. It preserves a system in which private attorneys are locally appointed; it is silent as to the payment of private attorneys' fees; it provides state-funding only of the state commission and state agency it creates.
>
> . . . To the extent that 1978 PA 620 requires *a new method* of selecting appellate counsel, the later act controls [but] [t]here is nothing in the language of the Appellate Defender Act that remotely suggests a legislative intent to change existing funding methods. [Emphasis added.]

Both positions prove too much, and, perhaps understandably in view of the administrative activity that is the backdrop of this lawsuit, both positions confront too little. The argument of re-

spondent is overstated to the extent that it suggests that the phrase "when the trial court so orders," Const 1963, art 1, § 20 must be read to limit the trial court's exercise of independent discretion in the appointment of appellate counsel. The right to appeal and the authority to appoint counsel need not be read on the one hand as absolute and on the other as qualified, as respondent suggests. They both can more reasonably be read as absolute. In other words, the provisions of the constitution and statutes can be harmonized by construing them to the extent possible as guaranteeing both that an appeal would be available and that the locally elected trial judiciary would provide counsel. Indeed, if we were to read MCL 775.16 *et seq.*; MSA 28.1253 *et seq.,* to require an independent determination by the trial court that the appeal of right was meritorious, it would run afoul of *Douglas v California,* 372 US 353; 83 S Ct 814; 9 L Ed 2d 811 (1963). And if we were to read MCL 775.17, 775.18; MSA 28.1254, 28.1255 to preclude the trial judge from appointing anyone but trial counsel, it might conflict with the principle that the trial court has inherent authority to compel an appropriation necessary to the performance of the statutory function mandated by MCL 780.712; MSA 28.1114(102). See *Judge of the Second Dist Court v Hillsdale Co,* 423 Mich 705; 378 NW2d 744 (1985). I think it more reasonable to conclude that the limitation in MCL 775.16 *et seq.*; MSA 28.1253 *et seq.,* has been repealed by implication, and the trial court's constitutional authority has been affirmed by the directive that counsel shall be appointed "by the trial court." MCL 780.712(6); MSA 28.1114(102)(6).

The amicus curiae position is overstated in suggesting that MCL 780.712; MSA 28.1114(102) requires "a new method of selecting appellate coun-

sel." In fact, the act does not facially purport to restrict the trial court's authority to appoint appellate counsel. Rather, the statute appears to carry forward the intent of the constitution providing that the appointment of counsel "shall be made by the trial court from the roster provided by the commission . . . ." MCL 780.712(6); MSA 28.1114(102)(6). The Legislature did not prescribe which roster attorneys should be appointed. Indeed, if one reads the constitutional provision consistently with MCL 780.712; MSA 28.1114(102), as we are required to do, one obvious conclusion is that the trial court is not obligated to use a different method of appointment, but, rather, is obligated only to appoint not less than twenty-five percent of cases to the state appellate defender.[3] As to the remainder, no method of appointment is directed—only that the persons appointed are roster-certified attorneys.

II

It may be safely concluded that the administrative order of this Court, AO 1989-3, does not authorize the trial court to impose a charge on the county pursuant to § 3 of the Appellate Defender Commission regulations. The regulations have never been adopted by this Court and therefore derive no binding force from our orders. Thus, while trial courts are bound to obey our order, presumably under pain of contempt, *In re Huff,*

[3] It bears observing that if the State Appellate Defender Office is required to accept one hundred percent of all appellate appointments, its ability to comply with MCL 780.716(c); MSA 28.1114(106)(c) directing it to "[a]ccept only that number of assignments and maintain a caseload which will insure quality criminal defense appellate services" would be impaired. It may follow that if the Legislature has given the State Appellate Defender Office the authority to declare a moratorium on its workload, it has the authority to selectively limit its cases.

352 Mich 402; 91 NW2d 613 (1958), it is the order that the trial court obeys, not the regulations.

The question regarding whether the trial court's order is grounded in § 3 of the regulations or is authorized by MCL 780.712; MSA 28.1114(102) and the constitution might, at first blush, be seen as a distinction without a difference. Stated plainly, if the trial judge must obey AO 1989-3, and an order of appointment authorizes a charge to the county under the constitution and statutory provisions, what difference does it make? The answer is, "Who pays?" an inquiry that turns on the critical question regarding whether the Legislature intended to assume funding responsibility in enacting MCL 780.712; MSA 28.1114(102), and the subsidiary question regarding whether the commission's purported authority to adopt regulations altering the trial court's authority is evidence of that intent.[4]

If alteration of the assignment system was in fact the objective of the Legislature, it may follow that the Legislature intended to fund the system. The commission comments to AO 1981-7 state that the procedures outlined encompass "a number of significant policy decisions. Foremost is the legislature's rejection of the ad hoc system of appointing counsel." Mich Ct R, p A 1-11. The commission concluded that the words "appointment . . . by the trial court," contained in MCL 780.712(6); MSA 28.1114(102)(6), did not contemplate selection by the trial judge. Mich Ct R, p A 1-12. The commission therefore proposed a system in which selection of appellate attorneys from the roster would be made by nonjudicial personnel according to standardized procedures and limited exceptions

---

[4] Another answer is, "Who has control?" If the Legislature did not intend to assume funding responsibility and the local control unit must assume the charge, it should logically follow that the control unit determines the system for appointment subject only to lawful limits on that authority.

to strict rotation "in order to avoid reintroducing the kind of discretionary decision-making [by trial courts] rotation is meant to eliminate." *Id.*

The claim that the Legislature intended to alter the system of appointment of assigned counsel may derive additional support from the approach taken by the Court in the administrative orders. The carefully crafted language of AO 1981-7 declined adoption of the regulations, and observed:

> [T]he operation of the system and enforcement of the standards pursuant to the system requires that the Legislature appropriate funds necessary to implement the system.

At the conclusion of the order, as entered, the Court used block capitals for emphasis and stated:

> WE REPEAT HERE THAT THE IMPLEMENTATION OF THE REGULATIONS GOVERNING THE SYSTEM FOR APPOINTMENT . . . REQUIRES LEGISLATIVE APPROPRIATION OF FUNDS SUFFICIENT TO OPERATE THE SYSTEM.

On February 8, 1985, by AO 1985-3, the Court again declined to adopt the regulations, affirmed AO 1982-2, and also stated:

> On the question of the regulations governing a system for appointment of appellate counsel for indigents in criminal cases, the Court is persuaded that 1978 PA 620 confides the development of such a system to the Appellate Defender Commission and not to this Court.

These actions appear to evidence the view that a

new system was being created that the Legislature was obligated to fund.[5]

These observations highlight the central and as yet unresolved questions from which the issue in this case arises, that is, did the Legislature intend to authorize alteration of the system, and do the commission's regulations therefore have substantive force? Stated otherwise, critical issues not reached in this case are whether, as the commission opines in its commentary to AO 1981-7, the Legislature intended to eliminate trial judge "selection" of appellate counsel for indigents, and whether the Legislature intended to eliminate contract representation by an attorney or group of attorneys who are roster certified and to limit the appointment of the State Appellate Defender Office to twenty-five percent of appointments for indigents.

Assuming that legislative intent was to be found, among the questions that would arise are:

[5] In AO 1989-3, ordering circuit courts and the Detroit Recorder's Court to comply with § 3 of the Appellate Defender Commission regulations, this Court, while again declining to adopt the regulations pursuant to "our power of general superintending control . . . under Const 1963, art 6, § 4," ordered appointments to be made as follows:

> [E]very third, fourth, or fifth assignment, or such other number of assignments as the Appellate Defender Commission may determine . . . to the State Appellate Defender Office.
>
> *    *    *
>
> All other assignments shall be made by rotating the local list.
>
> *    *    *
>
> Circuits which have contracted with an attorney or group of attorneys to provide representation on appeal for indigent defendants shall comply with these regulations . . . .

Section 3 thus incorporates a revised version of the rotational scheme of appointment, directs elimination of provision of appellate services to counties by contract with an attorney or group of attorneys, and authorizes the commission to determine the number of assignments made to the State Appellate Defender Office.

whether the Legislature had the constitutional authority to exercise such authority under Const 1963, art 3, § 2; whether, assuming such authority would not be the assumption of judicial authority, there is a conflict between MCL 780.712; MSA 28.1114(102) and the constitutional directive that appointment of counsel shall be "when the trial court so orders," Const 1963, art 1, § 20; whether the regulations are a proper delegation of legislative authority if such authority is found. Presuming answers to all of these questions that permit the conclusion that the state intended the system that is in effect, the difficult question would be faced regarding whether the system violates the strictures of Const 1963, art 9, § 29, prohibiting the Legislature from requiring new services or activities of local government or increasing the level of existing activities or services without appropriating funds to the local government for the necessary increased costs, and if so, what the appropriate remedy should be.[6]

In short, at the heart of this lawsuit are yet-to-be answered questions of law which while deemed moot "in light of Administrative Order 1989-3,"[7] have in reality not been mooted. While we have today answered the question regarding whether Mr. Frederick is to receive the compensation which is his due, our assertion of the unreviewable authority of superintending control in AO 1989-3

---

[6] This Court has not had occasion to say what the appropriate remedy may be when the Legislature requires a new activity or service of local government or an increase in the level of such activity or service, without appropriating funds to pay the unit of local government for any necessary increased costs, although this Court suggested in dicta in *Livingston Co v Dep't of Management & Budget,* 430 Mich 635, 652; 425 NW2d 65 (1988), that "the state presumably would be required to reimburse for the cost of that which is required."

[7] *In re State Appellate Defender Office and State Appellate Defender Comm v 26th Circuit Judges,* Docket No. 85216 (1989), Court of Appeals Docket No. 113884 (1988).

has left significant justiciable questions unanswered.

## III

The Court generally approaches a given administrative action with concern for the potential for impairment of related justiciable issues. In this case, for example, amicus curiae Michigan Appellate Assigned Counsel System has argued that the appellate defender act "has been superseded" on the method of selecting counsel "by the Supreme Court's order." The Court cannot rebut the legitimacy of the observation that AO 1989-3 has effectively superseded the statutes if it allows the order to effectively close the courthouse doors. Since the trial judiciary cannot create a legal controversy without risking contempt or disciplinary sanction, and the counties must pay if the trial court's order is authorized under law,[8] the administrative order may have precluded any claims to a forum for the resolution of the issues.

We need not accept the proposition that the entry of AO 1989-3 places the Court in the position of being unable to decide significant legal questions in the appropriate legal forum. Nor need we decide that the only way to open the courthouse door for a determination of the questions is the immediate recision of AO 1989-3. Immediate recision of the order to permit a test of the legal issues could have a chaotic effect on the appellate rights of indigent defendants, rights that, with all due respect to trial judges, funding units, and the

---

[8] Presumably, the county could enter a contract for provision of the services by a roster-certified attorney or attorneys. If the trial court declined to appoint the attorney or attorneys because AO 1989-3 requires rotational assignment and bans contract defenders, declaratory relief might be sought by the funding unit or the contract attorney or attorneys. MCR 2.605.

commission, are more important than "who pays," "who controls," or what the system for assigned counsel ought ideally to be.

On the other hand, it is plainly unacceptable that the Court should permit AO 1989-3 to foreclose trial judges from access to the institution they serve, and that funding units must pay for the system that operates pursuant to regulations that limit their options but have not been found to be lawful.

Rather than choose between these harsh alternatives, we would maintain the status quo and provide a forum for the resolution of the issues by directing the addition of a party, not here present, who can raise the issues that must be ultimately addressed. MCR 2.207. We would grant interim relief to plaintiff and, while retaining jurisdiction, remand this matter for joinder of the State of Michigan as party defendant and for further proceedings pursuant to this opinion before a judge to be appointed by the State Court Administrator.

In summary, while we agree on this record with the basic proposition that the trial court had the authority to appoint the plaintiff and that he is therefore entitled to reasonable compensation, this conclusion does not resolve the ultimate legal question regarding whether the regulations have the force of law and therefore require payment by the local funding unit. For purposes of this case, at this time it may only be said that it is not our order directing compliance with § 3 of the regulations that entitles plaintiff to payment, it is the Michigan Constitution and MCL 780.712; MSA 28.1114(102) that repose this authority in the trial court.[9]

---

[9] Assuming the Court were to determine that the authority of superintending control authorized limitation of that authority con-

RILEY, J., concurred with BOYLE, J.

GRIFFIN, J. (*concurring in part and dissenting in part*). Reluctantly, I concur in the majority's result. Until the state moves to meet its own solemn commitment to provide statewide funding for major portions of our system of justice, the counties will be left to continue bearing this particular expense.

However, I write separately to emphasize several points. First, the majority's holding should be qualified by § 6(c) of the Appellate Defender Act, MCL 780.716(c); MSA 28.1114(106)(c), which requires the state to bear financial responsibility for at least twenty-five percent of the total criminal defense appellate cases of indigents pending in the Michigan appellate courts.

The entitlement of indigent criminal defendants to appointed appellate counsel was elevated to the level of a constitutional right in 1963 when the United States Supreme Court decided *Douglas v California,* 372 US 353; 83 S Ct 814; 9 L Ed 2d 811 (1963). A few years later, in 1970, the State Appellate Defender Office was created by the Legislature. SADO is a state-financed entity that, by statute, is authorized and required (within limits) to represent indigent persons in appellate proceedings. In pertinent part, § 6(c) of the Appellate Defender Act provides:

ferred under Const 1963, art 1, § 20, we would have to determine whether and in what form some variation of the regulations should be adopted by this Court; a determination that should at minimum involve an inquiry regarding whether the increased costs which may be anticipated under a system which is not subject to the inherent constraints of budget considerations must be assumed by the local funding unit of the judiciary because fair and effective representation of indigents cannot otherwise be provided. The State Court Administrator indicated that, in 1988, $1,454,404 was expended for appellate counsel. In 1989, the figure rose to $1,673,267.

The appellate defender shall:

*   *   *

(c) Accept only that number of assignments and maintain a caseload which will insure quality criminal defense appellate services consistent with the funds appropriated by the state. *However, the number of cases assigned to the appellate defender office shall not be less than 25% of the total criminal defense appellate cases for indigents pending before the appellate courts of this state.* [MCL 780.716(c); MSA 28.1114(106)(c). Emphasis added.]

Because inadequate funding has been provided by the Legislature, while the number of criminal prosecutions throughout the state has increased, SADO has taken the position that it is unable to accept and handle twenty-five percent of the state-wide appellate caseload. At the present time, SADO is handling about seventeen percent of the total caseload.

Obviously, because the appointment of appellate counsel for indigent criminal defendants is constitutionally required, any cutback in funding for this purpose by the state has the effect of shifting to, and increasing the burden on, the counties.

As I read § 6(c) of the act, it clearly directs SADO to accept and handle at least twenty-five percent of the total criminal appeals for indigent defendants within the state. While the first sentence of that provision allows SADO to adjust its caseload so as to "insure quality . . . services consistent with the funds appropriated," the following sentence makes clear that this flexibility is available only with respect to that portion of the caseload that exceeds the twenty-five percent minimum requirement.[1]

---

[1] Administrative Order No. 1989-3 entered March 15, 1989, by this Court requires judges of each circuit court and the Recorder's Court of Detroit to comply with § 3 of the Michigan Appellate Assigned

SADO, a creature of the Legislature, has sought to justify the cutback in its caseload (and the compensation of appellate counsel) by pointing to the inadequacy of provided funds and arguing that the first sentence of § 6(c) somehow overrides the second. At the same time, the state, through SADO, contends that a similar shortage of funds at the county level affords no excuse for any failure by the county to compensate appointed appellate counsel.

The bottom line is that this Court is being asked to address a legislative problem. The answer lies with the Legislature either to change the law or provide more funding. For more than a decade, the Legislature has promised county governments that full state funding for Michigan's courts would be forthcoming. This commitment is evidenced in concrete terms in 1980 PA 438, MCL 600.9947; MSA 27A.9947. 1980 PA 438 was one of a package of six public acts which reorganized and provided for state financing of the Wayne County courts as a first step toward full state funding by 1988 of all state courts. MCL 600.9947; MSA 27A.9947 provides:

> The legislature shall appropriate sufficient funds in order to fund:
> (a) At least 20% of all court operational expenses in the state fiscal year beginning October 1, 1983.

---

Counsel System Regulations as adopted by the Appellate Defender Commission. That section provides in part that of the assignments made of appellate counsel to represent indigent criminal defendants, "every third, fourth, or fifth assignment, *or such other number of assignments as the Appellate Defender Commission may determine*," shall be made to SADO. (Emphasis added.) Of course, the commission by regulation could not increase its own authority over that provided by statute. I read § 3 of the MAACS regulations, including the emphasized language, as allowing the commission some flexibility in limiting the number of assignments to be made to SADO; however, as § 6(c) of the act specifies, such flexibility is available only with respect to that portion of the caseload that exceeds twenty-five percent.

(b) At least 40% of all court operational expenses in the state fiscal year beginning October 1, 1984.

(c) At least 60% of all court operational expenses in the state fiscal year beginning October 1, 1985.

(d) At least 80% of all court operational expenses in the state fiscal year beginning October 1, 1986.

(e) At least 100% of all court operational expenses in the state fiscal year beginning October 1, 1988.

Although the funding of Wayne County courts began in fiscal year 1982 and continues to this date (representing about twenty percent of the judicial budget), no steps have been taken by the Legislature to fulfill its commitment to the other counties in the state.

Through its inaction, the Legislature has allowed Michigan to fall behind other jurisdictions which have moved toward full state support of their court systems. The 1989 California Supreme Court Annual Report notes that "[w]ith two 1988 bills . . . California joined more than 30 other states that accept primary responsibility for funding their trial courts." 1989 California Supreme Court Annual Report, ch 7, p 32. A research letter, dated March 27, 1987, from the National Center for State Courts summarizing the results of a survey seeking information on the percentage of funding supplied by each state for their respective trial courts, identifies the following jurisdictions as having substantially state-supported courts: Alaska, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Iowa, Kansas, Kentucky, Maine, Massachusetts, Nebraska, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Vermont, Virginia, and West Virginia.

The existing uneven and insufficient allocation of county resources to the courts has made the efficient management and coördination of court services extremely difficult. Appointed counsel throughout the state are being paid disparate amounts or not being paid at all.

The Michigan Constitution calls for "one court of justice," Const 1963, art 6, § 1. Inherent in this mandate is a unified judicial system, financed by the state and administered under the supervision of this Court. The irony of the present case is that all of the parties would prefer the same solution— state funding for appointed appellate counsel. Unfortunately, at least until a more appropriate case involving the state as a party is brought before this Court, this solution will have to await action by the Legislature.