# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Attorney Fees of MITCHELL T. FOSTER.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID JOHN BERNARD,

        Defendant,

and

MITCHELL T. FOSTER,

        Appellant.

UNPUBLISHED
February 27, 2018

No. 334309
Oakland Circuit Court
LC No. 2015-253430-FH

---

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

In this appeal concerning the appropriate compensation due to an attorney appointed to represent an indigent criminal defendant, appellant, Mitchell T. Foster, appeals as of right the trial court's opinion and order granting in part and denying in part his motion for reconsideration of the trial court's award of fees. We affirm.

## I. FACTS

This appeal stems out of three charges of embezzlement[1] brought against defendant, David John Bernard. Bernard was originally represented by retained counsel, who saw Bernard through the preliminary examination and bindover. However, after retained counsel was permitted to withdraw from the case, Foster was appointed to represent Bernard. With Foster's assistance, Bernard eventually pleaded no contest to the charges brought against him pursuant to

---

[1] MCL 750.174. Bernard was charged with embezzling over $300,000 from his employer.

a *Cobbs*[2] agreement. Bernard was sentenced to three concurrent terms of 6 to 40 years' imprisonment.

Under the trial court's fee schedule, Foster was paid $385 for his services.[3] Foster subsequently sought additional compensation for his services. Explaining that he spent nearly 80 hours on the matter, Foster requested that he be paid $45 an hour for his services, for a total of slightly more than $3,500. The trial court initially awarded Foster an additional $115 without explanation. Foster filed a motion for reconsideration of this decision, again requesting the same amount. The trial court held a hearing, and after examining a spreadsheet of the hours Foster claimed to have spent on the case, issued a detailed, 10-page opinion and order. Ultimately, the trial court found it appropriate to award Foster an additional $200, for a total of $700.

## II. ANALYSIS

Foster raises essentially three arguments on appeal.[4] He contends that the trial court's decision was an abuse of discretion because it ultimately failed to order that he receive reasonable compensation for his services in this matter. Foster also contends that the trial court's decision violates the Sixth Amendment's right to counsel and the Fifth Amendment's takings clause. Though we sympathize with Foster's position, application of settled law to the decision of the trial court requires that we affirm.

### A. STANDARD OF REVIEW

A trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). "A trial court's determination regarding the reasonableness of compensation for services and expenses of court-appointed attorneys is reviewed for an abuse of discretion." *In re Foster Attorney Fees*, 317 Mich App 372, 375; 894 NW2d 718 (2016). An abuse of discretion occurs when the trial court reaches a decision falling outside the range of reasonable and principled outcomes. *Id*. To the extent this Court is asked to consider constitutional issues, this Court's review is de novo. *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004).[5]

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[3] Because he did not participate in the case from the beginning, Foster was paid half of the trial court's ordinary fee of $770 for this type of case.

[4] This Court has allowed the Criminal Defense Attorneys of Michigan (CDAM) to file a brief as amicus curiae. *In re Attorney Fees of Mitchell T Foster*, unpublished order of the Court of Appeals, entered February 16, 2017 (Docket No. 334309). CDAM argues in its amicus brief that appointed attorneys have a constitutional right to reasonable compensation and that the reasonableness of the compensation paid to appointed attorneys cannot depend on the trial court's own budgetary constraints.

[5] The trial court declined to address Foster's constitutional arguments. While the trial court's failure to address these questions could render the arguments unpreserved, *Mouzon v Achievable*

As this Court has explained:

"At common law" the burden of providing a defense to indigent defendants "was borne by members of the bar as part of the obligations assumed upon admission to practice law." *In re Recorder's Court Bar Ass'n*, 443 Mich 110, 121; 503 NW2d 885 (1993). However, in *Recorder's Court Bar Ass'n*, our Supreme Court, while noting that the validity and accuracy of this common-law rule was not without challenge, recognized that MCL 775.16 provides a statutory right to reasonable compensation for those attorneys appointed to represent indigent defendants. *Id.* at 122-123. Our Supreme Court held that while "what constitutes reasonable compensation may necessarily vary among circuits," "the Legislature clearly intended an individualized determination of reasonable compensation . . . ." *Id.* at 129-130. [*In re Foster Attorney Fees*, 317 Mich App at 375-376.]

## B. GUIDING PRINCIPLES

As this Court has also recognized, the statutory authority for compensating appointed attorneys was altered effective July 1, 2013, and no longer explicitly provides for a right to reasonable compensation. *Id.* at 376 n 1. The version of MCL 775.16 currently in effect, and which has been in effect throughout the proceedings in this matter, provides:

When a person charged with having committed a crime appears before a magistrate without counsel, the person shall be advised of his or her right to have counsel appointed. If the person states that he or she is unable to procure counsel, the magistrate shall appoint counsel, if the person is eligible for appointed counsel under the Michigan indigent defense commission act.

That said, even after our Legislature amended MCL 775.16, our Supreme Court has seemingly held, albeit in a peremptory order, that the "reasonable compensation" requirement still applies:

Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals as to Docket No. 316494, and we remand this case to the Kent Circuit Court for a determination of the reasonableness of the attorney fees requested. The trial court applied the county's fee schedule, which capped compensation for plea cases at $660, but did not address at all the reasonableness of the fee in relation to the actual services

---

*Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014), Foster "should not be punished for the omission of the trial court," *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). We address Foster's constitutional issues because they were raised in the trial court and concern legal questions, and all of the facts necessary to resolve the questions are present. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015).

rendered, as itemized by the appellant. See *In re Recorder's Court Bar Ass'n*, 443 Mich 110, 131[; 503 NW2d 885] (1993). Although the expenditure of any amount of time beyond that contemplated by the schedule for the typical case does not, ipso facto, warrant extra fees, spending a significant but reasonable number of hours beyond the norm may. On remand, the trial court shall either award the requested fees, or articulate on the record its basis for concluding that such fees are not reasonable. See, e.g., *In re Attorney Fees of Mullkoff*, 176 Mich App 82, 85-88[; 438 NW2d 878] (1989), and *In re Attorney Fees of Jamnik*, 176 Mich App 827, 831[; 440 NW2d 112] (1989). [*In re Attorney Fees of Ujlaky*, 498 Mich 890, 890 (2015).]

This Court, while declining to specifically address the issue, has explained that our Supreme Court's order in *Ujlaky* "indicates that the [reasonable compensation] requirement still exists." *In re Foster Attorney Fees*, 317 Mich App at 376 n 1. Further, a peremptory order of our Supreme Court is "binding precedent when [it] can be understood." *People v Phillips (After Second Remand)*, 227 Mich App 28, 38 n 11; 575 NW2d 784 (1997). See also *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993) (an order of the Supreme Court is binding if it is a final disposition of an application and it contains a concise statement of the Court's reasoning and applicable facts). We conclude that our Supreme Court's order in *Ujlaky* clearly satisfies these requirements and, thus, is binding on this Court. Accordingly, despite our Legislature's amendment to MCL 775.16, trial courts remain under a duty to determine whether fees requested by appointed counsel are reasonable. *In re Attorney Fees of Ujlaky*, 498 Mich at 890.

Admittedly, it is not at all clear where the "reasonable compensation" requirement could be derived from in light of the amendment to MCL 775.16. Clearly, the text of MCL 775.16 was the source of the rule prior to the amendment of the statute. See *In re Recorder's Court Bar Ass'n*, 443 Mich at 121-122. As is discussed later in this opinion, our Supreme Court's precedent also clearly holds that there is no constitutional right to reasonable compensation. *In re Meizlish*, 387 Mich 228; 196 NW2d 129 (1972). With no constitutional or statutory text to support the principle, the only other avenue is the common law. But the parties cite to no binding common-law decisions that address attorney fees for appointed counsel, and nor does the Court in *Ujlaky*. But regardless, our Supreme Court has seemingly held that, even though MCL 775.16 no longer provides a right to reasonable compensation, the right still exists.

With the understanding that appointed attorneys are entitled to reasonable compensation,[6] the question becomes what framework to apply when evaluating a trial court's decision

---

[6] Our resolution of this question renders it unnecessary to address the argument that the Sixth Amendment to the United States Constitution independently requires the payment of reasonable compensation to appointed counsel. "This Court will not unnecessarily decide constitutional issues, *People v Riley*, 465 Mich 442, 447; 636 NW2d 514 (2001), and it is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds." *J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003). Rather than review the constitutional argument,

-4-

regarding a fee request made by appointed counsel. In this regard, we again rely on *Ujlaky*. In *Ujlaky*, the Supreme Court remanded the matter and directed the trial court to two opinions of this Court, "*In re Attorney Fees of Mullkoff*, 176 Mich App 82, 85-88 (1989), and *In re Attorney Fees of Jamnik*, 176 Mich App 827, 831 (1989)." *In re Attorney Fees of Ujlaky*, 498 Mich at 890. The *Ujlaky* order also cited a prior opinion of that Court, *In re Recorder's Court Bar Ass'n*, 443 Mich at 127-129, where our Supreme Court set forth the general considerations underlying compensation issues for appointed counsel:

> The petitioners would have us define "reasonable compensation" as the amount privately retained counsel would earn for providing similar services for members of the general public. *We refuse to do so.* When MCL 775.16; MSA 28.1253 was enacted, counsel was provided without costs to indigent criminal defendants by lawyers as part of their professional obligations assumed upon admission to practice law in this state. Our review of the statute's legislative history leads us to conclude that the impetus underlying the enactment and subsequent amendments of MCL 775.16; MSA 28.1253 was the Legislature's desire to relieve members of the bar of at least *some* of their professional obligation to provide free legal services to the indigent.

> Iowa gives appointed counsel the statutory right to compensation equal to the current market rate. The Iowa Legislature amended its attorney compensation statute to provide that court-appointed counsel were entitled to reasonable "compensation to be made on the basis of ordinary and customary charges for like services in the community . . . ." Iowa Code 815.7; *Hulse v Van Wifvat*, 306 NW2d 707, 711 (Iowa, 1981) (construing the statute as amended to equate "reasonable compensation" with "full compensation"). Although our Legislature easily could have provided a similar definition for "reasonable compensation," it has not done so.

> \* \* \*

> Representation of indigent criminal defendants in the Third Circuit Court and the Detroit Recorder's Court is completely voluntary. Therefore, unlike the courts of other states that have considered an involuntarily appointed attorney's right to compensation, we decline, at this time, to establish any specific definition or formula for determining or calculating "reasonable compensation." In the proper exercise of its legislative authority, the Legislature has "directed the chief judge[s] of the circuit court to appoint an attorney to represent an indigent defendant's defense, and directed the county to pay" whatever a chief judge "considers . . . reasonable compensation for the services performed." *Frederick v Presque Isle Co Circuit Judge*, 439 Mich 1, 15; 476 NW2d 142 (1991). *There are fifty-six circuits plus the Detroit Recorder's Court in our state spread throughout*

---

we may simply rely on our Supreme Court's order in *Ujlaky* to hold that appointed attorneys remain entitled to reasonable compensation, despite the amendment to MCL 775.16.

*eighty-three counties of varying financial means. Attorney population likewise varies from county to county. Indeed, there is a potential myriad of local considerations that will necessarily enter into the chief judge's determination of "reasonable compensation." Thus, what constitutes reasonable compensation may necessarily vary among circuits.* [Emphasis added.]

In the first Court of Appeals decision cited, this Court explained that a trial court has an obligation (pursuant to the prior version of MCL 775.16) to "determine and award *reasonable compensation* for court appointed attorneys." *In re Attorney Fees of Mullkoff*, 176 Mich App at 85. This Court found no abuse of discretion in the trial court's decision to reduce the number of compensable hours for certain tasks because the trial court, after carefully reviewing the matters involved, determined that a lesser amount of time was reasonable for completing the tasks at issue. *Id*. at 85-86. This Court found an abuse of discretion in failing to award fees entirely for other tasks, however. Specifically, this Court determined that it was an abuse of discretion to refuse to award fees for the attorney "visiting his client in prison, attending oral argument in this Court, and appearing at the prosecutor's motion hearing to set a date for resentencing." *Id*. at 86. Thus, while *Mullkoff* may provide some guidance, it does not establish a general framework for reviewing the reasonableness of fees to be awarded to appointed counsel.

Fortunately, though, the second case cited does. In *In re Attorney Fees of Jamnik*, 176 Mich App at 831, this Court explained:

> We believe the following factors should be considered in determining reasonable compensation:
>
> 1. The complexity and difficulty of the case and the time and expense of counsel which can reasonably be justified.
>
> 2. The trial court's policy as to compensation.
>
> 3. The minimum standards for indigent criminal appellate defense services promulgated by the Michigan Supreme Court in Administrative Order 1981-7, 412 Mich lxxxiv-xci.

In support of his argument that the fees awarded were unreasonable, Foster advocates for application of the factors stated in *Wood v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982):

> [T]here is no precise formula for computing the reasonableness of an attorney's fee, but [the] factors to be considered are:
>
> > (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [Quotation marks and citations omitted.]

-6-

These factors have since been used in a myriad of cases involving the calculation of reasonable attorney fees for *retained counsel* in *civil matters*. See, e.g., *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016) (attorney fees pursuant to MCL 500.3148(1) of the no-fault act, MCL 500.3101 *et seq.*); *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008) (case evaluation sanctions pursuant to MCR 2.403); *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572; 884 NW2d 587 (2015) (sanctions pursuant to MCL 600.2591 for pursuing a frivolous defense); *Riemer v Johnson*, 311 Mich App 632; 876 NW2d 279 (2015) (attorney fees pursuant to MCR 3.206(C), which applies in domestic relations actions); *Prins v Mich State Police*, 299 Mich App 634; 831 NW2d 867 (2013) (attorney fees pursuant to MCL 15.240(6), a provision of the Freedom of Information Act, MCL 15.231 *et seq.*).

But this case is not a civil matter, and more importantly, does not involve retained counsel. And both facts affect the proper analysis, because the Supreme Court has explicitly refused to direct that appointed counsel be compensated in the same manner as retained counsel. *In re Recorder's Court Bar Ass'n*, 443 Mich at 127. Logically, then, it would make very little sense to rely on factors utilized to determine the reasonable compensation due to a retained attorney—in civil matters, no less—to determine the reasonable compensation due to a retained attorney in a criminal matter. Indeed, the Supreme Court's *Ujlaky* order directed the trial court to *Jamnik*, not *Wood* or any case discussing those factors. *In re Attorney Fees of Ujlaky*, 498 Mich at 890. Thus, we conclude that we must evaluate the case by looking to the factors stated in *In re Attorney Fees of Jamnik*, 176 Mich App at 831.

The distinction is not an unimportant one. The *Wood* factors look solely to the characteristics of the attorney and the case at hand, without any consideration given to the financial resources of whoever must pay the fee. See *Wood*, 413 Mich at 588. But under *Jamnik*, clearly, consideration is given to the ability of the local court to pay fees. *In re Attorney Fees of Jamnik*, 176 Mich App at 831 (citing "[t]he trial court's policy as to compensation" as one of three relevant factors). See also *In re Recorder's Court Bar Ass'n*, 443 Mich at 129 (explaining that there exists "a potential myriad of local considerations that will necessarily enter into the chief judge's determination of 'reasonable compensation' " under MCL 775.16); *id.* at 129 n 27 (explaining that "county budgetary concerns are appropriate considerations in the determination of 'reasonable compensation,' " albeit not controlling). Importantly, as the trial court repeatedly stressed at the motion hearing, the trial court operates under budget constraints that limit the "pool" of funds available for paying attorneys appointed to represent indigent defendants. If the trial court is not permitted to consider its own budget when determining a reasonable fee for appointed counsel, the result could easily be that this line-item of the annual budget would evaporate within months, leaving the court without the ability to compensate attorneys for representing indigent counsel throughout the remainder of the year.

Applying the *Jamnik* framework, we cannot conclude that the trial court abused its discretion. The first *Jamnik* factor considers "[t]he complexity and difficulty of the case and the time and expense of counsel which can reasonably be justified." *In re Attorney Fees of Jamnik*, 176 Mich App at 831. Concerning the complexity of the case, this matter was a three-count embezzlement case that was resolved through a plea agreement. Foster only began representing Bernard after the preliminary examination was complete and the matter bound over to the circuit court. It does not appear that this was a particularly novel or difficult case. And as the trial court correctly noted, Foster's only reason for arguing that this case was out of the ordinary was the

fact that he spent more time than usual on this particular matter. As our Supreme Court explained in *Ujlaky*, "the expenditure of any amount of time beyond that contemplated by the schedule for the typical case does not, ipso facto, warrant extra fees . . . ." *In re Attorney Fees of Ujlaky*, 498 Mich at 890. Simply asserting that he spent more time than usual on this matter does not, standing alone, warrant Foster receiving additional fees.

That said, "spending a significant *but reasonable* number of hours beyond the norm may [warrant additional compensation]." *Id*. (emphasis added). Thus, and as the first *Jamnik* factor contemplates, if Foster spent an inordinate amount of time defending this matter, and his expenditure of time "can reasonably be justified," *In re Attorney Fees of Jamnik*, 176 Mich App at 831, he may be entitled to additional compensation. Clearly, the trial court understood this portion of the analysis because it conducted a thorough review of Foster's claimed hours. Ultimately, the trial court found that most of the claimed hours could not be reasonably justified and, thus, did not warrant much in the way of additional compensation. The trial court did award Foster a total of $700, which was $315 more than called for under the trial court's fee schedule.

We now turn to Foster's challenge to the specific findings the trial court made with regard to his claimed hours.

## C. SPECIFIC CHALLENGES

Foster first challenges the trial court's decision not to award him any additional fees for the time he spent working with a court-appointed certified public accountant, Gerald Gabriel.[7] In its opinion and order, the trial court explained that it could not discern why Gabriel was necessary to the case, and refused to award any compensation for time Foster spent working with Gabriel or examining his report. On appeal, although Foster makes several conclusory statements that it should be obvious to anyone why Gabriel was necessary to the case, we too fail to see any such obvious link. Why a certified public accountant was necessary to address the questions Gabriel addressed is entirely unclear. It is also unclear why Foster needed to spend nearly 20 hours consulting with Gabriel and reviewing the report in order to understand Gabriel's conclusions that were clearly stated in the six-page report. We cannot find an abuse of discretion in the trial court's conclusion that the time Foster claimed to have spent consulting with Gabriel and reviewing the report was not reasonably justified.

Foster's arguments regarding the necessity of the expert also miss the mark because ultimately, the question is not so much the necessity of retaining Gabriel, but rather, the necessity

---

[7]Foster moved for Gabriel to be appointed to investigate the matter to counter the expected testimony of a forensic accountant who, after being retained by Bernard's employer, discovered Bernard's actions. Ultimately, Gabriel provided a six-page report that contained virtually no financial analysis. Instead, Gabriel questioned whether it could be shown that Bernard was ultimately responsible for stealing funds from his employer, which had indisputably been taken, and whether Bernard's job duties encompassed control over the company's petty cash account, which was at the center of the scheme. Foster relied on Gabriel's report to support a motion to quash the bindover, which was denied.

of Foster's time spent reviewing Gabriel's report and consulting with him. In this regard, Foster explains that counsel must, in order to provide effective assistance of counsel, adequately investigate the case. See *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). Foster fails to explain why the time he spent investigating Gabriel's conclusions was actually necessary, a task he may not leave to this Court to craft on his behalf. *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998).

Foster also contends that the trial court should not be allowed to second-guess his strategic decisions, particularly because no such inquiry is found in the *Wood* factors. But, under the controlling test from *Jamnik*, the trial court must consider "the time and expense of counsel which can reasonably be justified." *In re Attorney Fees of Jamnik*, 176 Mich App at 831. It was not only appropriate for the trial court to second-guess whether the claimed expense was necessary; the trial court was under an affirmative duty to conduct such an analysis. See *In re Attorney Fees of Mullkoff*, 176 Mich App at 85-86 (finding no abuse of discretion where the trial court reduced the attorney's claimed hours spent on certain matters; "The trial judge carefully reviewed the length of the trial transcript and determined a reasonable amount of time in which it should have been read and then added an additional hour for note taking. In regard to the time to prepare and draft the appellate brief, the lower court likewise considered the complexity of the case and clarity of the issue."); *In re Attorney Fees of Jacobs*, 185 Mich App 642, 647; 463 NW2d 171 (1990) (affirming the trial court's thorough review of appointed counsel's time and efforts to arrive at a reasonable fee amount). Foster's arguments lack merit.

We also reject Foster's contention that the trial court abused its discretion by failing to compensate him for time spent travelling to and from court. It is difficult to understand why Foster would be entitled to additional travel time compensation, beyond that contemplated by the trial court's fee schedule, for it is only time spent "beyond the norm" that may warrant additional compensation. *In re Attorney Fees of Ujlaky*, 498 Mich at 890. In any event, the trial court explained that Foster failed to provide sufficient evidence detailing his travel, such as where he was traveling to and from, and whether he was traveling to court to appear solely in Bernard's case or in other matters as well. Although Foster argues that it would be unconscionable to require such a level of proof, the trial court was under an obligation to consider whether Foster's claimed hours were reasonably justified. *In re Attorney Fees of Jamnik*, 176 Mich App at 831; *In re Attorney Fees of Jacobs*, 185 Mich App at 647. Requiring Foster to provide some proof beyond simply asserting that he spent certain hours driving to court in a spreadsheet is not only not unconscionable, it is entirely reasonable when the trial court must determine whether the claimed hours are reasonably justified.

The trial court also determined whether the fees were reasonable for what the court described as "basic tasks," which included "brief telephone calls and other conversations[,]" as well as time spent "drafting praecipes, emails, cover letters, and other standard legal documents[,]" preparing mail, personally serving subpoenas and motions, and reviewing correspondence. These tasks, each of which took little time, added up to 8.8 hours. With regard to these tasks, the trial court explained:

> Although Mr. Foster repeatedly points out that he is not being compensated at the rate that a retained attorney would be, the fact that he has painstakingly recorded every task that he completed in this manner suggests that he believes that he

should be compensated in a similar manner to that of a privately retained attorney. The Court finds that this is not reasonable in matters concerning criminal appointments. Further, as already stated, Mr. Foster argues that he is entitled to the rate of $45.00 per hour. This Court entirely fails to see how it would be reasonable to compensate Mr. Foster $396.00 for the completion of 8.8 hours' worth of basic tasks.

Foster contends that the trial court's analysis is flawed because, while appointed counsel cannot expect to be paid the same amount as privately retained counsel, "no court has ever suggested that the 'amount' charged by appointed counsel would be discounted by *ignoring time spent on the case*." Rather, Foster explains, it is the hourly rate of pay that is discounted (as opposed to the time spent on a task), and he requested a discounted rate of $45 an hour. For two reasons, Foster's argument misses the point. First, it is *time spent* "beyond the norm" that may warrant additional compensation. *In re Attorney Fees of Ujlaky*, 498 Mich at 890. In Oakland Circuit Court, appointed attorneys are paid pursuant to a fee schedule. The fee paid varies depending on the nature of the case and how it is disposed. Appointed attorneys are *not* paid on an hourly basis. The fee paid for each case would seem to account for basic tasks that would generally be expected of an attorney. As the trial court explained, Foster's accounting indicated that he expected to be compensated on an hourly basis, much the same as a retained attorney. Given Oakland Circuit Court's fee schedule, this is not a reasonable expectation.[8] Second, the trial court did not ultimately *ignore* time spent by Foster, rather, it refused to award *additional* compensation for tasks that would already be accounted for in the court's fee schedule. Additionally, even if it had, our Court has repeatedly upheld trial courts reducing the *actual* hours spent by appointed counsel to a *reasonable* number. *In re Attorney Fees of Jacobs*, 185 Mich App at 646; *In re Attorney Fees of Mullkoff*, 176 Mich App at 85-86. There was no abuse of discretion.

The same holds true for Foster's challenge to the trial court's refusal to award additional compensation for what the trial court described as "casual conversations" with the prosecutor and for "time [Foster] spent waiting for [Bernard]'s case to be called." Foster again seemingly fails to recognize that this is not a case where he was not compensated at all for his time. Rather, he was compensated under the trial court's fee schedule, and given an additional award on top of what the schedule called for. The fee schedule undoubtedly takes into account routine appearances, conversations, and time spent waiting for a case to be called. These are all ordinary events, incident to the representation of a client, that counsel must expect to occur. Again, it is time spent "beyond the norm" that may warrant additional compensation. *In re Ujlaky*, 498 Mich at 890.

---

[8] Foster briefly argues that Oakland County's use of its fee schedule is unconstitutional and unreasonable. This argument was not raised in the trial court, and thus, the question is not preserved for review on appeal. *Mouzon*, 308 Mich App at 419. Moreover, Foster ignores that the trial court did not adhere strictly to the fee schedule, instead deviating from that schedule at Foster's request. Such a procedure has been condoned by our Supreme Court. See *In re Attorney Fees of Ujlaky*, 498 Mich at 890.

Foster also briefly addresses the trial court's decision regarding the 14 hours he spent drafting five motions.[9] With the exception of the motion to quash, the trial court found that none were particularly detailed or required "a substantial amount of legal research or analysis," and thus concluded it reasonable to compensate Foster for three hours spent on the motion to quash. Foster contends that the trial court's analysis amounted to second-guessing his actions, which he posits "has a profound chilling effect on vigorous representation – defense counsel who is appointed will be careful not to spend too much time on defense work, fearing that the court will find that, in the court's opinion, the work was not necessary, and that the court could have accomplished the work in less time." Again, the trial court not only may, but *must* consider whether the time spent by an attorney "can reasonably be justified." *In re Attorney Fees of Jamnik*, 176 Mich App at 831. See also *In re Attorney Fees of Mullkoff*, 176 Mich App at 85-86.

Both Foster and CDAM express concern that the trial court based its ruling largely on its own budgetary concerns. It is true, as the *In re Recorder's Court Bar Ass'n* Court explained, that while "county budgetary concerns are appropriate considerations in the determination of 'reasonable compensation,' such considerations should seldom, if ever, be controlling. The counties have a duty to fund whatever the chief judge, in the exercise of sound discretion, deems appropriate." *In re Recorder's Court Bar Ass'n*, 443 Mich at 129 n 27. But although the trial court did appropriately consider its own budget when deciding this matter, the record clearly demonstrates it did *not* treat its budgetary concerns as *controlling*. The vast majority of the trial court's thorough and well-reasoned opinion is dedicated to discussing the reasonableness of Foster's claimed fees without any discussion of the trial court's budget. To say that the trial court treated its budgetary concerns as controlling simply ignores the record made below.[10]

## D. CONSTITUTIONAL ARGUMENTS

Foster contends that paying appointed counsel what he deems to be an unreasonably low fee denies the represented indigent defendant the right to counsel under the Sixth Amendment. However, in *In re Meizlish*, 387 Mich at 240, our Supreme Court rejected a similar challenge under the Sixth Amendment, explaining:

> We agree with the New Jersey court [in *State v Rush*, 46 NJ 399; 217 A2d 441 (1966),] that an indigent defendant is not deprived of his constitutional rights

---

[9] The trial court did not include motions Foster drafted with respect to Gabriel's fees, explaining that it had already decided that issue.

[10] Nor are we swayed by the practical concern raised by CDAM. CDAM contends that if the trial court is permitted to rely on its own budgetary constraints, rather than those of the county as a whole, the trial court may avoid paying reasonable compensation to appointed attorneys by manipulating its own budget. Unlike CDAM, we are confident that trial courts make every attempt to be fair and reasonable when crafting a budget for appointed counsel, and when crafting compensation plans that balance budgetary concerns with the concerns of indigent defendants and those attorneys who are appointed to represent them.

by the appointment of unpaid counsel. Dedication and diligence to a client's cause should not be altered because of the payment of a higher fee. Judging by the numerous complaints received by the State Bar Grievance Administrator, the payment of minimum fees does not insure the quality of work from retained counsel. Most attorneys are dedicated and will zealously protect the rights of any client they defend.

If it is constitutionally permissible to appoint unpaid counsel, it cannot seriously be argued that appointed counsel is constitutionally entitled to an adequate or reasonable fee. Unless and until our Supreme Court rejects *Meizlish*, this Court is bound to reject Foster's challenge.

*Meizlish* also precludes Foster's contentions that the payment of a low fee amounts to a taking of his property in violation of the takings clause of the Fifth Amendment.

> Appellant's contention that he has been deprived of due process and equal protection under the United States Constitution and Michigan Constitution 1963 has been discussed and decided adversely to him by numerous courts in this country. In *United States v Dillon*, 346 F2d 633 (CA 9, 1965), *cert den* 382 US 978; 86 S Ct 550; 15 L Ed 2d 469 [(1966)], the Court rejected an attorney's contention that property was taken in violation of due process of law when he was forced to defend an indigent defendant without compensation. The Court stated . . . :

> "An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a 'taking of his services.' " [*Id*. at 635.]

> In *Jackson v State*, 413 P2d 488, 490 (Alas, 1966)[, overruled by *DeLisio v Alaska Superior Court*, 740 P2d 437 (Alas, 1987)], the Court held that the attorney did not have a constitutional right to compensation for defending an indigent defendant. The Court stated:

> "The requirement of the attorneys' oath and Canon 4 reflect a tradition deeply rooted in the common law—that an attorney is an officer of the court assisting the court in the administration of justice, and that as such he has an obligation when called upon by the court to render his services for indigents in criminal cases without payment of a fee except as may be provided by statute or rule of court. This principle is so firmly established in the history of the courts and the legal profession that it may be said to be a condition under which lawyers are licensed to practice as officers of the court." [*In re Meizlish*, 387 Mich at 236-237.]

## E. RESPONSE TO THE DISSENT

In reviewing the dissenting opinion, one overriding principle repeatedly comes to mind. That is, courts are limited to declaring what the law is, not what it should be. *Obergefell v Hodges*, 576 US ___, 135 SCt 2584, 2611; 192 L Ed 2d 609 (2015) (ROBERTS, C.J., joined by SCALIA and THOMAS, JJ., dissenting). This is particularly important for an intermediate appellate Court, as our primary task is to act as an error-correcting Court. Despite this principle, our dissenting colleague repeatedly makes reference to what the controlling law "should" be on these issues. For example, the dissent suggests that cases such as *Pirgu*, which govern the determination of retained civil counsel compensation, and which have never been the standard for determining compensation for appointed criminal counsel, should apply to these circumstances. The dissent also opines that the standards in *In re Jamnik*, just recently cited with approval by the Supreme Court, should be discarded. However, it is not our duty as judges in general, or as intermediate appellate judges specifically, to write dissents based upon law that has not been deemed controlling by any prior published opinion in this state. Neither our dissenting colleague nor Foster cites to any decision that supports the theory that compensation disputes regarding appointed criminal counsel should be governed by the same standards used for civil retained counsel. And, as we have already pointed out, our Supreme Court has explicitly refused to make that leap. See *In re Recorder's Court Bar Ass'n*, 443 Mich at 127. Consequently, despite the vigor of the dissent and Foster's articulation of their position, it is simply one that has not been adopted by any court of this state, and that has been specifically rejected by the Supreme Court.

Additionally, we take great umbrage with the dissent's characterization that we have taken Foster "to task" for submitting a bill reflecting all the time he spent on this case. We have done no such thing, and the dissent has not cited to any language within our opinion that does so. However, what we have stated is that – consistent with Michigan precedent – many of the more minor entries made by Foster are not considered for extra compensation purposes when they are comprised of routine matters. Our opinion says nothing as to whether Foster should maintain detailed billings, as there is no need to for purposes of deciding this case. Nor do we criticize his retention of Gabriel; instead, we uphold under the deferential standard of review the trial court's findings that Foster's time spent reviewing Gabriel's report was not necessary for compensation purposes.

Finally, for several reasons, we reject the dissent's dual notions that "[t]he majority holds that a court properly ranks its own budget as a primary factor in determining a reasonable fee, and may heavily discount a request if the judge retrospectively decides that work done by an attorney was unnecessary." First, neither our opinion, nor that of the trial court, unduly emphasized the county budget. As we have previously explained, the vast majority of the trial court's opinion addressed the specific issues raised by Foster, not the county budget. And as we have noted, the local budget *is* one of three factors the court was required to consider. Second, the dissent seems to criticize the trial court for "retrospectively" deciding that certain of Foster's work was not entitled to additional compensation. When else was it to be done-before the hours were expended? The request for additional compensation was submitted after the work was complete, and the trial court was obligated *at that time* to decide what was, or was not, reasonable. And the fact that a request for additional compensation *may* be "heavily discount[ed]" should be of no surprise to Foster or any other attorney who takes assignments

from that court or, for that matter, any other circuit court in this state. The unfortunate fact is that in many cases (though certainly not all) appointed criminal attorneys do not get the compensation that is warranted, but the fee schedules are published and are well-known by attorneys practicing in this field.

Compensation for appointed criminal counsel has morphed over the years. At statehood through 1927, attorneys who performed these services had no common law right to compensation. *In re Recorder's Court Bar Ass'n*, 443 Mich at 121-122, citing *Bacon v Wayne Co*, 1 Mich 461 (1850). MCL 775.16 was first enacted in 1927, and provided that, upon services being provided, the presiding judge had the discretion to award reasonable compensation for the work performed. Now the issue is governed by the most recent amendment to MCL 775.16, which contains no specific mention of fees to be paid counsel, but instead contains reference to the Michigan indigent defense commission act, MCL 780.981 *et seq*. Whether changes made through that act will alter the fee determination landscape for appointed criminal counsel has yet to be seen, but nothing in statute or caselaw currently provides the changes advocated by the dissent and Foster.

Affirmed.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood